# STATE OF MICHIGAN

# COURT OF APPEALS

PAULINE LYNN COLEMAN,

      Plaintiff-Appellant,

v

GARY LEE COLEMAN,

      Defendant-Appellee.

UNPUBLISHED
May 23, 2017

No. 332452
Saginaw Circuit Court
LC No. 15-026191-DO

Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right a stipulated order amending an earlier judgment of divorce, in which the trial court distributed the parties' marital property and denied plaintiff's request for spousal support. We affirm.

## I. BASIC FACTS

Plaintiff and defendant were married in September 1998, and thereafter lived in a home defendant purchased before the marriage. In March 2015, plaintiff filed a complaint for divorce, citing an irreparable breakdown in the parties' relationship. Defendant had already moved out of the home in October 2014. Plaintiff also filed a motion seeking temporary spousal support and attorney fees, which the court referred to conciliation. Following conciliation, the trial court ordered defendant to pay the mortgage on the home and ordered the parties to pay their own utility and cell phone bills, car payments and insurance, and personal expenses.

In August 2015, defendant filed a motion for sole use of the marital home and for return of personal property. He alleged that plaintiff had moved to Indiana to live with her cousin, Greg Hedrick, and had taken a substantial amount of property with her. At a hearing on the motion, plaintiff agreed that she removed several items from the home, but argued that defendant also took a substantial amount of property when he left the home in October 2014. Following the hearing, the trial court awarded defendant sole use of the marital home, instructed plaintiff to remove any of her personal necessities within two weeks, and ordered her not to remove any other personal property items unless the parties mutually agreed.

At a bench trial on the divorce complaint, the parties stipulated to the value of the home at the time of the marriage, the amount of the outstanding mortgage and equity line of credit on the home, and the value of three vehicles and two motorcycles. They agreed to equally split any

-1-

retirement funds accumulated during the marriage, to keep their separate life insurance policies, and agreed that plaintiff made $34,253 annually and defendant had an average income of $88,650 from 2010 to 2014. The parties acknowledged that defendant wanted to retire on March 1, 2016, at the age of 60. They disputed whether plaintiff was entitled to spousal support, the current value of the home, and who was entitled to a 2014 tax refund, a truck and two motorcycles, and several remaining miscellaneous items of personal property.

At trial, plaintiff testified regarding an incident in 2012 in which defendant allegedly knocked the top of a curio cabinet onto plaintiff's foot and an incident in 2015 in which he allegedly threw plaintiff into the side of a trailer, breaking three of her ribs. Plaintiff asserted that defendant was responsible for the breakdown in the parties' relationship, citing an incident in which she tracked his iPhone to the home of his ex-wife. Plaintiff explained that she was living with Hedrick in Indiana and did not intend to return to Michigan. She alleged that she recently made payments for back taxes, defendant's life insurance premiums, and a Sears credit card in defendant's name, for which she sought repayment. After narrowing down a list of personal property items, plaintiff asked the court to award her an oak cabinet with the glass inside, a lawnmower, a snow blower, a leaf blower, a stand-up toolbox, and an enclosed trailer.

Defendant testified that he accidentally bumped the curio cabinet during the 2012 incident and denied that he intentionally pushed plaintiff into the side of a trailer in 2015. He asserted that he left the home in October 2014 because plaintiff was having an affair with Hedrick. Defendant denied knowing about the Sears credit card, and asked to keep the lawnmower, leaf blower, and snow blower to maintain the property. He requested repayment for a Consumers Energy bill and an Art Van credit card bill he said he paid on plaintiff's behalf.

The trial court found that the parties were married for more than 16 years, plaintiff was 48 and defendant was 59 years old at the time of the divorce, and neither party had chronic health concerns. The court found that both parties had demonstrated an ability to earn income, but noted that defendant's income would decrease when he retired. The court found that plaintiff took most of the furniture from the home when she moved to Indiana and there was evidence of infidelity by both parties. It found that the 2012 and 2015 incidents were merely heated arguments; there was no evidence that defendant physically abused plaintiff during the marriage. The court determined the current value of the home based on its State Equalized Value, noting that a market analysis report provided by plaintiff stating a higher value did not offer a summary or an explanation for the author's conclusions.

The court awarded plaintiff half of the marital equity in the home, a 2009 Chevrolet Impala, and a 1992 Harley Davidson motorcycle, and awarded defendant a 2009 Pontiac G3, a 2007 Chevrolet Silverado, and a 2002 Harley Davidson motorcycle. Regarding personal property items, the court awarded plaintiff the small oak cabinet with the glass inside, a small toolbox, and the enclosed trailer, and awarded the lawnmower, snow blower, and leaf blower to defendant, explaining that plaintiff did not need the items in her current living arrangement. The court stated that all other property items would remain with the party currently in possession, and equally divided all pensions and retirement accounts accumulated during the marriage, awarded the parties their respective life insurance policies, and awarded each party half of the 2014 tax refund. The court denied the parties' respective requests for repayment of the Sears credit card debt, defendant's life insurance premiums, and the Art Van credit card debt, noting that each

party failed to present evidence that the other was solely responsible for the debt. However, the court ordered plaintiff to repay the Consumer Energy bill incurred while she was living alone in the home. The court stated the following in conclusion:

> [T]he assets and liabilities in the marital estate that are capable of valuation have an approximate value of $80,669.50. In addition to a significant amount of household furnishings and other personal property items from the marital home, Plaintiff wife has been awarded property and current liabilities with a net value of $37,090.00. Defendant husband has been awarded property and current liabilities with a net value of approximately $43,579.50 as well as miscellaneous items of personal property which have not been appraised.[1]

The court also concluded that plaintiff was not entitled to spousal support, considering her relatively young age, defendant's upcoming retirement, plaintiff's cohabitation with another adult, and her failure to provide any evidence regarding her anticipated living expenses. On appeal, plaintiff argues that the trial court abused its discretion by refusing to impute income to defendant despite his early retirement and by denying her request for spousal support.[2] She further argues that the trial court failed to equitably distribute the parties' marital property.

## II. SPOUSAL SUPPORT

We review for an abuse of discretion both a trial court's decision to award spousal support and its decision whether to impute income to a party. *Loutts v Loutts*, 298 Mich App 21,

---

[1] It is unclear from the trial court's opinion how it reached these exact numbers. From the items that were assigned specific values in the opinion, plaintiff received $35,400 of assets (made up of the home equity, the 2009 Chevrolet Impala, the 1992 Harley Davidson motorcycle, and the 2014 tax refund) and defendant received $38,850 of assets (made up of the home equity, the 2009 Pontiac G3, the 2007 Chevrolet Silverado, the 2002 Harley Davidson motorcycle, and the 2014 tax refund). Plaintiff also incurred liabilities of at least $2,177.27 (made up of the Consumers Energy bill and the Sears credit card debt), and defendant incurred liabilities of at least $194.77 (the Art Van credit card debt). The court did not assign specific values to any of the other items awarded.

[2] The judgment of divorce stated that "neither the Plaintiff nor the Defendant shall be awarded any spousal support/alimony, either temporary or permanent, nor is the issue of spousal support reserved for the future *and the issue is forever waived and barred*." (Emphasis added.) In *Staple v Staple*, 241 Mich App 562, 573; 616 NW2d 219 (2000), this Court interpreted MCL 552.28 and held that "[t]his statute unambiguously gives either party to an alimony judgment the right to petition the court to modify an alimony provision" in situations in which the spousal-support provision of a divorce judgment results from the trial court's disposition, rather than the agreement of the parties. Although not directly related to the issues presented in this appeal, we note that, because the spousal-support provision in this case did not result from an agreement of the parties, the trial court was not allowed to preclude either party from seeking to modify the spousal-support provision in the future.

25-26; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id.* at 26 (quotation marks and citation omitted). A trial court's factual findings associated with an award of spousal support are reviewed for clear error. *Id.* A finding is clearly erroneous if we are definitely and firmly convinced that the trial court made a mistake. *Id.* "If the trial court's findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Woodington v Shokoohi*, 288 Mich App 352, 355; 792 NW2d 63 (2010). "The trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003).

The purpose of spousal support is to balance the needs and incomes of the parties in a way that will not impoverish either party. *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). A spousal support determination must be based on what is just and reasonable under the circumstances of the case. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). Factors the trial court should consider include the following:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008) (quotation marks and citation omitted).]

"The voluntary reduction of income may be considered in determining the proper amount of alimony." *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000). "If a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award." *Id*. When deciding whether to impute income, however, courts should avoid "unduly interfer[ing] with the personal lives and career choices of individuals," while balancing the need to "protect those who have been dependent on their spouse for support . . . ." *Healy v Healy*, 175 Mich App 187, 191; 437 NW2d 355 (1989).

Plaintiff argues that the trial court abused its discretion by refusing to impute greater income to defendant because he voluntarily reduced his income by retiring early at the age of 60. No evidence was presented at trial regarding whether defendant's retirement was voluntary or involuntary. Assuming the retirement was voluntary, the trial court could have imputed income to defendant for purposes of evaluating whether plaintiff was entitled to spousal support. See *Moore*, 242 Mich App at 655 (explaining that a court *may* impute additional income if it finds a party voluntarily reduced his or her income). However, the trial court's decision was discretionary. *Gates*, 256 Mich App at 432. Considering that defendant was nearing a typical age for retirement and the fact that there was no evidence that he planned his retirement to avoid paying spousal support, the trial court could have reasonably decided not to penalize defendant for this personal career choice. See *Healy*, 175 Mich App at 191.

More importantly, even if the trial court imputed income to defendant in the amount of his pre-retirement earnings, plaintiff has not shown that she was entitled to spousal support. The purpose of spousal support is to balance the incomes and needs of the parties so that neither party will be impoverished. *Korth*, 256 Mich App at 289. Plaintiff was 48 years old, had a demonstrated ability to earn at least $34,253 annually, had no chronic health concerns, was awarded significant assets from the marital estate, and was cohabiting with another adult with whom she could share living expenses. Plaintiff did not introduce any evidence regarding her anticipated living expenses following the divorce and therefore did not demonstrate that a denial of spousal support would leave her impoverished. Under the circumstances, the trial court did not abuse its discretion by refusing to impute income to defendant or by denying plaintiff's request for spousal support.

## III. PROPERTY DISTRIBUTION

We review a trial court's factual findings in a divorce case for clear error. *Berger*, 277 Mich App at 717. If we uphold a trial court's factual findings, we must then decide whether the trial court's dispositional ruling was equitable in light of the facts. *Id.* We will affirm a trial court's ruling regarding the division of marital property unless we are definitely and firmly convinced that the division was inequitable. *Id.* at 717-718.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates*, 256 Mich App at 423. The division need not be mathematically equal, but the trial court must clearly explain any significant departure from congruence. *Id.* When dividing property pursuant to a divorce, the trial court must consider the following factors if they are relevant to the case:

(1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992).]

Plaintiff argues that the trial court awarded her a lesser portion of the marital estate because it factored in the property she removed from the home while failing to consider that defendant also retained a bedroom set, a dining room set, living room furniture, appliances, yard maintenance items and a lawnmower worth $9,600, tools, and valuable firearms. However, plaintiff ignores that the trial court specifically stated in its opinion that it was awarding defendant assets with a specific net value "as well as miscellaneous items of personal property which have not been appraised."

Further, plaintiff has not produced any evidence showing that the total value of the property she received was significantly less than the property defendant received. In addition to the items that were specifically assigned monetary values at trial, testimony during the proceedings established that defendant retained a Broyhill bedroom set, a La-Z-Boy sofa and chair, a 32-inch TV and DVD player, an oak dining room set, a coffee table, a sofa table, a side table, four place settings, a coffee pot, toaster, miscellaneous tools, a lawnmower, a leaf blower, a snow blower, a drill press, and an air compressor. Testimony revealed that plaintiff retained a

tanning bed, all of the furniture from the living room, dining room, master bedroom, and spare bedroom of the home, all items from the pantry, kitchen cupboards, and bedroom and living room closets, as well as play items for her grandchildren, an oak cabinet with the glass inside, a toolbox, and an enclosed trailer. Apart from her testimony that she believed the lawnmower defendant received was worth $9,600, plaintiff did not introduce any evidence concerning the value of these other property items. Therefore, plaintiff has not shown that she received a less valuable portion of the marital estate or that the trial court's property distribution was inequitable under the circumstances.

        Affirmed.


        /s/ Amy Ronayne Krause
        /s/ Kirsten Frank Kelly
        /s/ Michael F. Gadola