STAPLE v STAPLE

Docket No. 204026. Submitted November 30, 1999, at Lansing. Decided
    June 27, 2000, at 9:05 A.M.

   Robert W. Staple sought a divorce from Marcella A. Staple in the
      Dickinson Circuit Court, which entered a consent judgment of
      divorce that provided for the plaintiff's payment of alimony to the
      defendant for six years, subject to reduction if the defendant were
      to earn more than a certain amount from employment and subject
      to elimination if the defendant were to remarry or die. The defend-
      ant subsequently filed a motion for a modification of alimony. The
      court, Francis D. Brouilette, J, denied the motion, ruling that the
      judgment provided for nonmodifiable alimony in gross. The Court
      of Appeals, WHITBECK, P.J., and MARKMAN and O'CONNELL, JJ.,
      affirmed the decision of the trial court, stating that it was con-
      strained by MCR 7.215(H)(1) to follow *Bonfiglio v Pring*, 202 Mich
      App 61 (1993), which held that the question whether alimony pro-
      vided in a consent judgment of divorce is nonmodifiable alimony in
      gross or modifiable periodic alimony is to be determined according
      to what the parties intended and that the inclusion of death or
      remarriage contingencies to alimony intended as alimony in gross
      does not transform it into periodic alimony. Had the panel not been
      so constrained, it would have held that alimony subject to contin-
      gencies for remarriage or death should always be considered as
      periodic alimony that is subject to modification under MCL 552.68;
      MSA 25.106. The Court of Appeals, following a poll of its judges,
      issued an order vacating the Court of Appeals opinion in this case
      and convening a special panel to resolve the conflict that would
      have been created between the panels in *Bonfiglio* and *Staple* but
      for the provisions of MCR 7.215(H)(1). 237 Mich App 805 (1999).
         After consideration by the conflict resolution panel, the Court of
      Appeals *held*:
         Parties to a consent judgment of divorce may waive their right
      under MCL 552.28; MSA 25.106 to later petition the court for a
      modification of alimony. An agreement to waive that right must
      clearly and unambiguously state that the parties forgo their statu-
      tory right to petition the court for modification of alimony and
      agree that the alimony provision is final, binding, and nonmodifi-

able. Additionally, the agreement must be reflected in the judgment of divorce.

The insufficient record in this case prevents the Court of Appeals from determining whether the parties expressly waived the right to petition the trial court for modification of alimony. The matter must be remanded for further proceedings consistent with the Court of Appeals opinion.

Remanded.

Divorce — Alimony — Modification — Consent Judgments.

Parties to a consent judgment of divorce may waive their statutory right to later petition the court for a modification of alimony; in order to be enforceable, an agreement to waive the statutory right must be reflected in the judgment and must clearly and unambiguously state that the parties forgo their statutory right and agree that the alimony provision is final, binding, and nonmodifiable (MCL 552.28; MSA 25.106).

*Peter W. Ryan, P.C.* (by *Mikael G. Hahner*), for the plaintiff.

*Donald F. LeMire*, for the defendant.

Amici Curiae:

*Norman K. Kravitz* and *Charlotte L. Allen*, for Family Law Section of State Bar of Michigan.

*Bookholder & Bassett, P.C.* (by *Scott Bassett*), for Michigan Chapter of American Academy of Matrimonial Lawyers.

Before: Bandstra, C.J., and Hood, McDonald, Fitzgerald, Saad, Wilder, and Collins, JJ.

Saad, J. This special conflicts panel[1] was convened to resolve a dispute between two panels of our court

---

[1] MCR 7.215(H)(1) provides that a panel of this Court must follow the rule of law established by a prior published decision of this Court issued on or after November 1, 1990. MCR 7.215(H)(3) provides a conflict resolution procedure when a panel disagrees with a decision published on or after November 1, 1990. Under this procedure, when a panel disagrees

in *Bonfiglio v Pring,* 202 Mich App 61; 507 NW2d 759 (1993), and *Staple v Staple,* 237 Mich App 805 (1999) (*Staple I*). MCL 552.28; MSA 25.106 gives either party to a divorce judgment the right to petition the court to amend the alimony[2] provisions of the judgment. This conflicts panel is asked to decide if parties who negotiate a divorce settlement may forgo this statutory right to petition the court to modify the alimony provisions and instead agree that the agreed-upon alimony provisions are final, binding, and nonmodifiable. We conclude the answer to this question is yes.

## I. NATURE OF THE CASE

In Michigan, as in other states,[3] litigants and their lawyers have struggled for years with the question of when an agreed-upon alimony provision in a divorce judgment entered pursuant to a settlement is subject to future modification, and when it is final and nonmodifiable. In general, judgments, including consent judgments, entered by our courts are final and binding.[4] *Zelenka v Wayne Co Corp Counsel,* 143 Mich App 567, 571-572; 372 NW2d 356 (1985). Indeed,

---

with a decision published on or after November 1, 1990, it may call on the full Court to vote on whether to convene a conflicts panel. If a majority of the judges of this Court agree to convene the conflicts panel, the Court selects by lot seven judges to review the conflicting opinion. The conflicts panel's decision is binding on all panels of this Court unless reversed or modified by the Supreme Court. See MCR 7.215(H)(3).

[2] The phrase "spousal support" now is often employed in statutes and court rules. The word "alimony," however, appears throughout the record and in the statute on which we base our decision. Therefore, we shall use that term throughout this opinion.

[3] See *Nichols v Nichols,* 162 Wis 2d 96; 469 NW2d 619 (1991); *Karon v Karon,* 435 NW2d 501 (Minn, 1989); *Varn v Varn,* 242 Ga 309; 248 SE2d 667 (1978).

[4] See also MCR 2.612(C) on the limited grounds for relief from judgment.

"[p]ublic policy demands finality of litigation in the area of family law to preserve surviving family structure." *McGinn v McGinn*, 126 Mich App 689, 693; 337 NW2d 632 (1983); *Mixon v Mixon*, 237 Mich App 159, 167; 602 NW2d 406 (1999).

However, our courts and our Legislature have long recognized that the general rule of finality is not always suitable in the realm of matrimonial law. In many situations, judgments of divorce must anticipate that circumstances will change for both the spouses who require support and the spouses who must provide that support.[5] Accordingly, flexibility in the form of modifiable arrangements may be more important than finality of judgments in certain cases. Consequently, our Legislature long ago provided that courts may modify judgments for alimony upon the petition of either party. MCL 552.28; MSA 25.106.

Although MCL 552.28; MSA 25.106 unambiguously provides that parties to a divorce may petition the trial court for modification of alimony, our decisions also recognize that divorcing spouses can, in some circumstances, structure an alimony agreement that will not be subject to future modification. See *Staple I, supra*, 808. On many occasions, this Court has addressed the question whether a particular alimony provision in a divorce judgment entered pursuant to settlement is modifiable or nonmodifiable. Two dis-

---

[5] Similarly, domestic relations law takes into consideration the changing needs of children and parents in child support arrangements. Consequently, the need to allow modification of child support payments upon a change of circumstances outweighs the importance of the finality of judgments. *Crego v Coleman*, 232 Mich App 284, 290-291; 591 NW2d 277 (1998). We recognize that child support entails several legal and public policy considerations not applicable to alimony. Therefore, this decision should not be read as having any applicability to child support provisions.

tinct approaches to this issue have emerged out of this body of case law, the "bright-line" approach and the "intent" approach. Courts adhering to the bright-line approach have held that the modifiability of alimony depends strictly on whether the alimony is classified as "alimony in gross" or "periodic alimony"— terms we regard as confusing misnomers. The alimony in gross and periodic alimony differentiation can be summarized as follows: If the alimony is either a lump sum or a definite sum to be paid in installments, the alimony provision is classified as alimony in gross. This term is somewhat misleading, because alimony in gross is not really alimony intended for the maintenance of a spouse, but rather is in the nature of a division of property. Accordingly, alimony in gross is considered nonmodifiable and exempt from modification under MCL 552.28; MSA 25.106, though the recipient spouse dies or remarries before all the payments are made. *Edgar v Edgar*, 366 Mich 580; 115 NW2d 286 (1962); *Kutchai v Kutchai* 233 Mich 569; 207 NW 818 (1926). However, if the installment payments are subject to any contingency, such as death or remarriage of a spouse, courts adhering to the bright-line approach hold that the payments are more in the nature of maintenance payments, and therefore periodic alimony subject to modification. *Staple I, supra,* 809. Courts that decide the modifiability issue according to the periodic alimony or alimony in gross distinction have regarded the presence of a contingency as a bright-line indicator that the arrangement is for modifiable periodic alimony—though the parties have agreed or intended that the alimony not be subject to modification under MCL 552.28; MSA 25.106. *Staple I,* 809-811. The panel

in *Staple I* preferred this approach. *Id.*, 814. See also *Hall v Hall*, 157 Mich App 239; 403 NW2d 530 (1987), *Van Houten v Van Houten*, 159 Mich App 713; 407 NW2d 69 (1987); *Couzens v Couzens*, 140 Mich App 423; 364 NW2d 340 (1985); *Welch v Welch*, 112 Mich App 524; 316 NW2d 258 (1982).

Courts following the "intent" approach have eschewed the bright-line test and opted instead to resolve the "finality" versus "modifiability" dilemma in accordance with the parties' intent. Under this approach, the parties' intent takes precedence over the presence of contingencies. *Bonfiglio, supra*, 65. Courts following this approach recognize that MCL 552.28; MSA 25.106 allows for the modification of alimony, but unlike courts that adhere to the bright-line rule, allow the parties greater freedom in deciding if the alimony they agree to is periodic alimony or alimony in gross. *Bonfiglio, supra*, 63, 65. See also *Turner v Turner*, 180 Mich App 170; 446 NW2d 608 (1989); *Blake v Blake*, 178 Mich App 315; 443 NW2d 408 (1989); *Pierce v Pierce*, 166 Mich App 579; 420 NW2d 855 (1988); *Macoit v Macoit*, 165 Mich App 390; 418 NW2d 476 (1988).

Prior to our Court's ruling in *Bonfiglio, supra*, the panels of this Court were split on the bright-line and intent approaches. *Bonfiglio* resolved this conflict by embracing the intent rule. Because *Bonfiglio* was decided after November 1, 1990, it is binding precedent establishing the intent rule as the law in Michigan. MCR 7.215(H). Because the *Staple* I panel was obligated to comply with *Bonfiglio* contrary to its preference for the bright-line approach, it called for this special conflicts panel to resolve the matter. MCR 7.215(H)(3).

Accordingly, we must decide today if this Court should continue to adhere to the intent approach of *Bonfiglio* or return to the bright-line approach as recommended by the *Staple I* Court. Because this issue is of great practical importance to divorce litigants and the matrimonial bar, we have invited the Family Law Section of the State Bar and the American Academy of Matrimonial Lawyers (AAML) to submit amicus briefs to share their informed perspective on the law and policy of modification of alimony agreements.

### II. SUMMARY OF OUR HOLDING

After considering this issue in light of the statutory language of MCL 552.28; MSA 25.106 and the public policy behind our laws on alimony and the finality of judgment, we adopt a modified approach that allows the parties to a divorce settlement to clearly express their intent to forgo their statutory right to petition for modification of an agreed-upon alimony provision, and to clearly express their intent that the alimony provision is final, binding, and thus nonmodifiable. Of course, MCL 552.28; MSA 25.106 creates a statutory right in either party to seek modification of alimony. However, like many other statutory and constitutional rights, parties may waive their rights under MCL 552.28; MSA 25.106. If the parties to a divorce agree to waive the right to petition for modification of alimony, and agree that the alimony provision is binding and nonmodifiable, and this agreement is contained in the judgment of divorce, their agreement will constitute a binding waiver of rights under MCL 552.28; MSA 25.106. In brief, we opt to honor the parties' clearly expressed intention to forgo the right to seek modification and to agree to finality and non-

modifiability. Our holding is consistent with the trend seen in both the courts and the legislatures of our sister states.[6]

Before embarking on a detailed discussion of the facts of this case and our analysis of the conflicts issue, we emphasize that our decision applies only to judgments entered pursuant to the parties' own negotiated settlement agreements, not to alimony provisions of a judgment entered after an adjudication on the merits. MCL 552.28; MSA 25.106 will always apply to any alimony arrangement adjudicated by the trial court when the parties are unable to reach their own agreement. Furthermore, nothing in this decision should be read as applying to voluntary child support arrangements—an issue that involves legal and public policy considerations not applicable to alimony.

### III. STATEMENT OF FACTS

The *Staple I* Court has already recited the pertinent facts of this case:

> The parties were married in February 1969. In late June 1990, Robert Staple filed for divorce after twenty-one years of marriage; at that time, Robert Staple was approximately forty-three years old while Marcella Staple was approximately forty years old. The parties had three children during their marriage, one of whom was an adult at the time of the divorce. In late March 1990, Marcella Staple was severely injured in an automobile accident that left her a permanent paraplegic. Marcella Staple also suffered from

---

[6] For examples of state statutes that specifically enable parties to enter into nonmodifiable alimony agreements, see Ariz Rev Stat 25-319(D); Cal Fam Code 3651(d); Md Code Ann Fam Law 8-103(b); 750 Ill Comp Stat 5/502(f). For examples of state court decisions upholding waivers of the right to seek modification, see *Nichols, Karon,* and *Varn,* n 3, *supra,* each discussed in detail in the text of this opinion.

thyroid cancer in the past and had been informed seven years earlier that this cancer could return within eight years.

The parties reached a settlement regarding all issues relating to the divorce and apparently agreed to allow the minor children to choose the parent with whom they wished to reside and that Robert Staple would pay child support payments of $50 a week until all the children reached the age of majority, regardless of where they chose to reside. In addition, the parties apparently agreed that Marcella Staple would pay no child support regardless of where the children resided.

With regard to the amount and term of alimony and child support, the parties agreed that Robert Staple was obligated to pay Marcella Staple: (1) $200 a week through the first year following the divorce; (2) $225 a week through the second and third years following the divorce; (3) $150 a week through the fourth year following the divorce; and (4) $75 a week through the fifth and sixth years following the divorce. (These payments included the $50 child support payments). The parties also agreed that Robert Staple's alimony payments would be reduced in the event that Marcella Staple obtained employment and her gross income from that employment exceeded $1,200 a month. Robert Staple's counsel explained that "for every dollar over $1,200 [Marcella Staple] receives, [Robert Staple] will get a reduction of 50 cents." The parties also agreed that Robert Staple's support obligations would end in the event that Marcella Staple either died or remarried. These terms were incorporated into the consent judgment. Robert Staple also agreed to maintain Marcella Staple "in full force and effect" on his health care insurance received through his employment.

In mid-April 1997 the trial court conducted a hearing regarding Marcella Staple's motion for an increase in the amount and term of the alimony award provided for in the consent judgment of divorce. Marcella Staple argued that the alimony award was periodic alimony and was subject to modification upon a showing of changed circumstances. Marcella Staple emphasized that there was no judicial

intent with respect to whether it should be periodic alimony or alimony "in gross" because the parties had agreed to the award. Marcella Staple also noted that child support affected the amount of monthly payments and argued that there was no "sum specific" because it could be reduced if Marcella Staple were to begin earning more than $1,200 a month in income. In addition, Marcella Staple pointed out that there is no alimony "in gross" clause in the consent judgment. Marcella Staple also stressed that Robert Staple would no longer be required to pay alimony in the event of her death or remarriage. Robert Staple argued primarily that the alimony award was limited to a six-year duration and therefore represented an intent for alimony "in gross."

The trial court ruled that the alimony provision contained in the consent judgment of divorce was nonmodifiable alimony "in gross." The trial court based its decision on *Bonfiglio v Pring*, 202 Mich App 61; 507 NW2d 759 (1993), noting that because "[Bonfiglio holds] that the inclusion of a survivor or remarriage contingency in an alimony provision does not automatically or conclusively create modifiable alimony, the court should focus on the intentions of the parties in negotiating a settlement agreement and give effect to that intent."

The trial court considered: (1) that the alimony was to end upon the death or remarriage of Marcella Staple; (2) that it was taxable to Marcella Staple and deductible to Robert Staple; and (3) that there were "a number of contingencies" regarding the alimony provision. However, the trial court noted that these were "mathematically determinable" and that the alimony award had a fixed maximum. The trial court held that with the exception of some contingencies based on the occurrence of specific events, the six-year alimony award represented a sum certain and therefore constituted alimony "in gross." The trial court concluded by finding that Marcella Staple was not entitled to alimony beyond the six-year period specified in the consent judgment of divorce. Thus, because the trial court relied directly on the reasoning and holding in *Bonfiglio*, we are squarely presented with the question whether that case was correctly decided. [*Staple I, supra*, 805-807.]

The panel admitted its preference for the bright-line rule and stated that because the payments were subject to termination if Marcella Staple became employed, died, or remarried, the payments constituted periodic alimony subject to modification under MCL 552.28; MSA 25.106. However, the Court recognized that it was obligated to follow *Bonfiglio* and affirm the decision of the trial court. *Staple I, supra*, 814.

IV. ANALYSIS

The *Staple I/Bonfiglio* conflict arises from a statutory exception to the general rule that settlements and judgments are binding and final. Normally, judgments are final and binding and, absent reasons such as fraud, preclude relitigation of matters already decided and reduced to judgments. *Zelenka, supra; Colestock v Colestock*, 135 Mich App 393, 397-398; 354 NW2d 354 (1984); see also MCR 2.612(C). "Res judicata applies to default judgments and consent judgments as well as to judgments derived from contested trials." *Schwartz v City of Flint*, 187 Mich App 191, 194; 466 NW2d 357 (1991). The principle of finality, however, does not apply to settlements of alimony and child support arrangements. *Tomblinson v Tomblinson*, 183 Mich App 589, 593; 455 NW2d 346 (1990). Our Legislature, similar to several other state legislatures,[7] enacted a statute specifically governing the modifiability of alimony judgments:

---

[7] For example, Wis Stat 767.32(1) and 767.08(2)(b); Minn Stat 518.64, subd 2.

> After a judgment for alimony or other allowance, for either party and children, or any of them . . . the court may, from time to time, on the petition of either of the parties, revise and alter such judgment, respecting the amount of such alimony or allowance and the payment thereof . . . . [MCL 552.28; MSA 25.106.]

This statute unambiguously gives either party to an alimony judgment the right to petition the court to modify an alimony provision and thus provides an important statutory exception to the standard final judgment rule. Courts addressing the bright-line/intent conflict face the dilemma of whether to apply the statute to *all* alimony agreements or honor the intent of the parties entering into an agreement that precludes modification.

Proponents of the intent approach maintain that the parties' intent and the finality of judgment are of paramount importance. As the *Bonfiglio* Court held:

> We prefer the latter [intent] approach, and hold that the inclusion of a survival or a remarriage contingency in an alimony provision does not automatically or conclusively create modifiable periodic alimony rather than nonmodifiable alimony in gross. Instead, when called upon to distinguish between modifiable and nonmodifiable alimony, courts should focus on the intentions of the parties in negotiating a settlement agreement, or of the trial court in fashioning an alimony award, and give effect to that intent. [*Bonfiglio, supra,* 65.]

Proponents of the bright-line rule recognize that the intent approach "rests on a policy perspective that parties to a divorce should be able to contract regarding the settlement of their cases." *Staple I, supra,* 812. However, the bright-line courts maintain that MCL 552.28; MSA 25.106 overrides the parties' intent:

[W]hatever the merits of such policy considerations, we are of the view that they do not justify departing from the statutory language of MCL 552.28; MSA 25.106 providing that alimony in the form of an allowance for a party is subject to modification by the circuit court. [*Staple I, supra,* 812.]

In accordance with this view, proponents of the bright-line approach state that alimony (except for no-contingency alimony in gross, which is really a property division) is necessarily subject to modification under this statute. *Id.*

We appreciate the bright-line approach's due attention to the statutory provision. However, the bright-line reasoning gives rise to another question: may the parties themselves voluntarily agree to refrain from exercising their statutory rights to petition the court for modification of alimony? That is, may the parties stipulate to forgo their statutory rights to seek modification and instead stipulate that their agreement regarding alimony is final, binding, and nonmodifiable? We believe that this question, rather than the attempt to distinguish alimony in gross from periodic alimony, better addresses the nature of this conflict.[8]

Initially, we note that the statute does not preclude the parties from waiving their rights to petition the court for modification. In contrast, many of our statutes contain express provisions that nullify any attempted waiver of the rights provided by those statutes. For example, the Worker's Disability Compensa-

---

[8] On the other hand, we are not entirely satisfied with the intent approach, which we believe gives insufficient attention to the provisions of MCL 552.28; MSA 25.106. See *Pinka v Pinka*, 206 Mich App 101, 103; 520 NW2d 371 (1994); Bonfiglio, supra, 63.

tion Act,[9] the Michigan Employment Security Act[10] and the teacher tenure act[11] all contain provisions stating that the persons protected by these statutes cannot waive the rights they enjoy under these acts. Though not dispositive, the absence of any nullification of waiver in the statute suggests that parties' waiver agreements should be enforceable. *Karon v Karon*, 435 NW2d 501, 503 (Minn, 1989).

Moreover, we note that this Court has enforced agreements to waive statutory rights. For example, in *Russo v Wolbers*, 116 Mich App 327, 340; 323 NW2d 385 (1982), this Court held that a contractual waiver of a buyer's statutory right to a three-month redemption period on a land contract was enforceable.

More importantly, when parties waive claims to alimony altogether, MCL 552.28; MSA 25.106 does not provide an escape from that waiver. As this Court stated in *Copeland v Copeland*, 109 Mich App 683, 686; 311 NW2d 452 (1981), if a divorce judgment "provided that no alimony shall be paid, the decree cannot be modified to require one party to contribute toward the maintenance of the other." In other words, if the parties agree in their settlement that neither party will pay alimony to the other, and a judgment is entered pursuant to the terms of that settlement, then neither party has the right to petition the court under MCL 552.28; MSA 25.106 to modify that agreement by adding an alimony provision where none existed before. If divorce litigants are permanently bound to an agreement to waive alimony altogether, then they

---

[9] MCL 418.815; MSA 17.237(815).
[10] MCL 421.31; MSA 17.533.
[11] MCL 38.172; MSA 15.2054.

should also be bound to an agreement to waive future modifications of the agreed-upon alimony arrangement.

As noted above, our sister states have enforced divorce settlements in which the parties waived future modification of alimony. In *Nichols v Nichols*, 162 Wis 2d 96; 469 NW2d 619 (1991), the Wisconsin Supreme Court considered if a divorce judgment could preclude modification of spousal maintenance, notwithstanding the Wisconsin statute providing that maintenance was always subject to modification upon a showing of the requisite change in circumstances. *Id.*, 100, 103; Wis Stat 767.32(1) and 767.08(2)(b). Section 767.32(1) provided, in relevant part, that "[a]fter a judgment providing for . . . maintenance payments . . . the court may, from time to time, . . . revise and alter such judgment respecting the amount of such maintenance . . . and the payment thereof."[12] Section 767.08(2)(b) provided that "[t]he amount [of alimony or child support] so ordered to be paid may be changed or modified by the court upon notice of motion or order to show cause by either party upon sufficient evidence." *Nichols, supra*, 103, n 4. The court held that the maintenance statutes did not nullify the parties' agreement to waive future modification:

> Contrary to [the wife's] assertion, refusing to modify maintenance in this case does not nullify secs. 767.32(1) and 767.08(2)(b), Stats. If the legislature intended to pre-

---

[12] The amended version of this statute now in effect further provides "except that a judgment or order that waives maintenance payments for either party shall not thereafter be revised or altered in that respect nor shall the provisions of a judgment or order with respect to final division of property be subject to revision or modification."

vent parties from entering into nonmodifiable maintenance agreements, it would have expressly prohibited such agreements. Historically, the legislature has explicitly stated when the terms of a statute may not be modified by contract. [*Nichols, supra,* 106.]

The Wisconsin high court further commented that nullifying waivers of future modification would discourage the settlement of divorce cases. *Id.,* 115.

Similarly, in *Karon v Karon,* 435 NW2d 501, 503 (Minn, 1989), the Minnesota Supreme Court held that consent judgments waiving future modification of alimony were not void under Minn Stat 518.64, Minnesota's version of MCL 552.28; MSA 25.106. At the time of the *Karon* decision, § 518.64 provided that "[a]fter an order for maintenance or support money, temporary or permanent, . . . the court may from time to time, on petition of either of the parties, . . . modify the order respecting the amount of maintenance or support money, and the payment of it . . . ."[13] The Minnesota court noted, as we do, that there is "no valid distinction" between a stipulation to waive all maintenance at the time of the initial decree (which was previously held enforceable under the Minnesota statute) and waiver of future modification. *Karon, supra,* 503. The Minnesota court also noted, as we do, that waiver of a statutory right is not without precedent. *Id.* See also *Loo v Loo,* 520 NW2d 740, 746, n 6 (Minn, 1994), stating that the *Karon* rule had been superseded by Minn Stat 518.552, subd 5, which specifies requirements for stipulating waiver of modification.

---

[13] *Karon, supra,* 505-506 (Justice Coyne, dissenting.)

Additionally, in *Varn v Varn*, 242 Ga 309; 248 SE2d 667 (1978), the court held that waivers of the right to seek modification were valid, as long as the agreement "expressly waives the right of modification by referring specifically to that right." *Id.*, 311. The court held that such waivers were acceptable under Ga Code Ann 30-220, which provided that a judgment for permanent alimony to support the wife "shall be subject to revision upon petition filed by either the husband or the wife showing a change in the income or financial status of the husband." The Alabama Court of Civil Appeals upheld such agreements in *DuValle v DuValle*, 348 So 2d 1067 (Ala Civ App, 1977). The Alabama court rejected a bright-line approach based on the distinction between alimony in gross and periodic alimony and opted instead to discern the parties' intent as expressed in their agreement. *Id.*, 1069-1070.

We hold, as did the *Nichols, Karon, Varn, and DuValle* courts, that the statutory right to seek modification of alimony may be waived by the parties where they specifically forgo their statutory right to petition the court for modification and agree that the alimony provision is final, binding, and nonmodifiable.[14]

Our decision today advances several public policies. Both the AAML and the Family Law Section favor this approach. The AAML comments that "[r]ecognizing and enforcing" the parties' waiver of modification "does no violence to public policy, and is consistent

---

[14] Of course, when the parties agree to a property division by fixed, nonmodifiable installment payments (that is, the misleadingly named "alimony in gross" arrangement), there is no statutory right to modification under MCL 552.28; MSA 25.106. *Edgar, supra; Kutchai, supra.* Our ruling today has no effect on these agreements, which, as we have already stated, involve divisions of property and are not truly alimony arrangements.

with the reasonable expectancy interests of the parties." The AAML also offers five public policy reasons why courts should enforce duly executed nonmodifiable alimony arrangements: (1) Nonmodifiable agreements enable parties to structure package settlements, in which alimony, asset divisions, attorney fees, postsecondary tuition for children, and related matters are all coordinated in a single, mutually acceptable agreement; (2) finality of divorce provisions allows predictability for parties planning their postdivorce lives; (3) finality fosters judicial economy; (4) finality and predictability lower the cost of divorce for both parties; (5) enforcing agreed-upon provisions for alimony will encourage increased compliance with agreements by parties who know that their agreements can and will be enforced by the court.[15] The Family Law Section of the State Bar, representing more than three thousand family law specialists, elaborates on the public policy value of finality in divorce cases:

> There is probably not a single family law practitioner in the State of Michigan who would not advocate the importance of finality in their divorce cases. Divorce cases, by their nature, involve parties coming together and resolving contentious matters. . . . The parties, after the divorce, wish to go on in their separate lives and not . . . be subject to future petitions for relief . . . .

In addition to these public policy concerns aptly expressed by amici, our decision today also advances

---

[15] The AAML adopted these public policy arguments from an amicus brief filed with the Supreme Court of Minnesota in *Karon, supra.*

the public policy of requiring individuals to honor their agreements.[16]

Having held that agreements to waive the right to modification of alimony are enforceable, we now consider the conditions that must be satisfied for courts to uphold such agreements. As noted above, this issue historically has been framed as a question of alimony in gross versus periodic alimony. Because we depart from that framework, it is necessary to consider how courts are to recognize when parties have effectively waived their right to petition for future alimony modifications.

We are mindful of this Court's earlier expression of dissatisfaction with any approach that leaves the litigants and their lawyers unsure of how to frame the settlement with certainty and confidence that their alimony agreement is modifiable or nonmodifiable. On this point, our Court's earlier expression regarding the importance of clarity merits repeating:

> Having reached a resolution regarding the intent of the parties, we now express our conviction that it is a waste of precious judicial and client resources for the parties to leave to this court the determination of the parties' intent regarding whether the alimony is in gross or periodic. In order to prevent this very type of protracted litigation, the parties' or the court's intent should be clearly and unequivocally expressed upon the record and in the ultimate instrument that incorporates the alimony provision.
>
> All too often, the parties involved have no idea what the differences are between alimony in gross and periodic alimony, much less how those intentions should be expressed in the judgment. Accordingly, it should be incumbent upon the bench and bar to make it crystal clear to the parties

---

[16] See *Karon, supra,* 504.

what it is they are agreeing to and what the implications of their acquiescence may be. In cases where the parties agree to provide for alimony in gross, the payee should clearly articulate, through testimony or otherwise, that the payee understands that the alimony is in gross and therefore nonmodifiable. In cases where the alimony is periodic, the payor should clearly articulate that the payor fully understands that a change in circumstances may cause the award to be modified. [*Pinka v Pinka*, 206 Mich App 101, 105-106; 520 NW2d 371 (1994).]

To avoid any confusion on the part of judges, litigants, or lawyers with regard to the modifiability of alimony provisions, we reiterate our holding and emphasize how parties to a divorce settlement may, with confidence, settle on alimony provisions. Without prescribing any "magic words," we hold that to be enforceable, agreements to waive the statutory right to petition the court for modification of alimony must clearly and unambiguously set forth that the parties (1) forgo their statutory right to petition the court for modification and (2) agree that the alimony provision is final, binding, and nonmodifiable.[17] Furthermore, as we stated in *Pinka*, this agreement should be reflected in the judgment of divorce entered pursuant to the parties' settlement.[18]

---

[17] Generally, we agree with the statement in *Varn, supra*, 311, stating that "parties to an alimony agreement may obtain modification unless the agreement expressly waives the right of modification by referring specifically to that right; the right to modification will be waived by agreement of the parties only in very clear waiver language which refers to the right of modification."

[18] "In order to prevent . . . protracted litigation, the parties' . . . intent should be clearly and unequivocally expressed upon the record and in the ultimate instrument that incorporates the alimony provision." *Pinka, supra*, 105-106. We again note that our opinion addresses only negotiated alimony settlements, and we emphasize that the subsequent judgment of divorce, and not simply any settlement agreement referenced in the judg-

V. CONCLUSION

The record before us is insufficient to determine if the parties' alimony agreement expressly waived the right to petition the court for modification of alimony. We therefore remand for further proceedings in accordance with our opinion. We do not retain jurisdiction.

---

ment, should reflect the parties' clear and unambiguous agreement regarding the modifiability of alimony.