# STATE OF MICHIGAN

# COURT OF APPEALS

DOROTHY HASSAN, Personal Representative
for the Estate of BASSAM HASSAN,

        Plaintiff-Appellee,

v

MICH PROPERTY & CASUALTY GUARANTY
ASSOCIATION,

        Defendant-Appellant.

UNPUBLISHED
October 12, 2017

No. 332738
Wayne Circuit Court
LC No. 15-003123-CZ

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Michigan Property & Casualty Guaranty Association (the Association), appeals as of right from an order granting summary disposition in favor of plaintiff, Dorothy Hassan as personal representative for the Estate of Bassam Hassan (the estate), pursuant to MCR 2.116(C)(9) (failure to state a valid defense) and MCR 2.116(C)(10) (no genuine issue of material fact). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In June 2002, Bassam Hassan, the estate's decedent, was seriously injured in an automobile accident. At the time, Hassan had an automobile insurance claim with the Insurance Company of New York (INSCORP), and he received no-fault benefits from INSCORP until 2007 when it denied his claim. Hassan filed suit against INSCORP, but while the case was pending, he died. Nevertheless, on November 3, 2008, his estate reached a settlement with INSCORP whereby the estate would release its first-party claims against INSCORP in exchange for $75,000. After the settlement was finalized, the circuit court closed the case.

INSCORP, however, never paid the $75,000 to the estate. And, on June 10, 2009, it entered into a receivership in New York. A few weeks later, on June 23, 2009, the estate's claim against INSCORP was reinstated by the circuit court because of the lack of payment on the settlement agreement.

-1-

On June 29, 2009, the New York court handling INSCORP's receivership issued an order of rehabilitation finding that INSCORP was insolvent. The rehabilitation order also included a 120-day temporary injunction against the prosecution of ongoing claims, including actions on a "settlement or judgment." On September 22, 2009, before the temporary injunction expired, the New York court extended it until December 21, 2009. Then, although the order extending the injunction expressly stated that no further extensions of the injunction would be granted, in a show cause order entered on December 18, 2009, the New York court extended the temporary injunction until February 23, 2010. Apparently unaware that the injunction had been extended until February 23, 2010, the estate filed a motion for enforcement of its settlement agreement with INSCORP, and on January 22, 2010, the circuit court entered a judgment for $75,000 against INSCORP in the estate's favor. Although the judgment was improperly entered, it has not been set aside. See MCR 2.612(C).

On March 4, 2010, the New York court entered an order of liquidation that declared INSCORP insolvent and stated that it was the "final order of liquidation for purposes of triggering the property and casualty guaranty associations in the respective states in which INSCORP previously did business." The liquidation order also provided that "[i]n accordance with Insurance Law Section 7405, all contracts and agreements, including all leases, tax sharing agreements and employment contracts of INSCORP, however described, shall terminate and all liability thereunder shall cease and be fixed as of the date of entry of this Order unless expressly assumed in writing by the Liquidator."

On June 16, 2010, the estate sent a letter to the New York Liquidation Bureau, explaining that it had filed suit against INSCORP in the fall of 2007 after INSCORP failed to pay outstanding no-fault benefits, that the suit against INSCORP was settled for $75,000, that INSCORP did not pay, that the estate waited until the expiration of the injunction to move for a judgment, and that a judgment was entered in the estate's favor in January 2010. The estate requested that the New York Liquidation Bureau "put this in line for payment particularly since this matter was settled for less than half of the value of the claim." On July 22, 2010, the estate sent a second letter to the New York Liquidation Bureau that provided almost exactly the same information and request for action.

The New York Liquidation Bureau sent a copy of the July 22, 2010 letter to the Association. In response, the Association sent a letter to the estate's lawyer. In the letter, the Association acknowledged receipt of the July 22, 2010 letter, and stated that it had "not yet reviewed the former claim file." The Association requested a number of documents from the estate, including a no-fault questionnaire, an affidavit on other insurance, an affidavit of Medicare eligibility, an authorization for a release of records, a statement of claim, and W9s from both the law firm representing the estate and the estate's personal representative. The Association also requested that if the estate had "not submitted a claim to any insurer of a lower priority" to "please do so immediately." Finally, the Association stated that it was "also in need of verification as to who accepted service of the summons & complaint, who was the attorney of record for INSCORP, as well as the supporting documents for the outstanding medical bills of $36,520.21, prescriptions of $234.07 and attendant care of $144,036." The Association explained that the estate's "assistance in providing the requested information will result in a prompt determination of coverage available from the [Association]. Once we have received all of the requested documentation the file will be reviewed further for a determination whether the

matter qualifies as a 'covered claim' under" Property and Casualty Guaranty Association Act, MCL 500.7901 *et seq*.

The estate apparently did not provide any of the requested information.

Subsequently, on December 22, 2010, the Association sent a second letter to the estate, explaining that it needed additional information "in order to determine whether or not the above matter qualifies as a 'covered claim' under the act." It also contended that the January 22, 2010 judgment was entered in violation of the rehabilitation order. The letter concluded by stating that "[b]ecause the [Association] has not received any information to determine whether or not this is a covered claim, and whether or not there is any other source of insurance which would cover this claim, and because the Judgment was entered in violation of the Rehabilitation Order, the [Association] must respectfully deny this claim."

On April 14, 2011, the estate sent a letter to the Association. The estate explained

As you know, our firm reached a resolution of this matter long before the Insurance Company of New York was liquidated and before there was a temporary injunction. Since they have no assets, the claim was sent to the [Association] for payment. As you can see, we significantly compromised our claim in order to get the case settled. Our hope is to receive payment in the most expeditious fashion. Please let us know if you need any additional information.

In support of its claim, the estate attached several documents to the letter, including:

1. A copy of a May 9, 2008 letter to INSCORP's lawyer that outlined the estate's claim and had "all supporting documentation" attached, which included Hassan's medical records and copies of billing statements;

2. A copy of the January 22, 2010 judgment against INSCORP;

3. A copy of the release of first-party claims;

4. A letter from INSCORP's lawyer memorializing the $75,000 settlement agreement; and

5. A December 12, 2008 letter from INSCORP's lawyer that enclosed a copy of the release.

On May 3, 2011, the Association acknowledged receipt of the April 14, 2011 letter and supporting documentation, but it noted that it had provided the estate with various forms that had not yet been returned.

In the meantime, on October 25, 2012, the New York court issued an order setting December 31, 2012 as the last date to submit a claim to any property and casualty guaranty association. It is undisputed that, besides the aforementioned letters, the estate did not submit any other claim to the Association before December 31, 2012. Instead, on March 12, 2015, the estate filed its complaint against the Association, seeking payment on the $75,000 judgment.

-3-

The estate alleged that, contrary to the Property and Casualty Guaranty Act, the Association wrongfully refused to pay benefits due to the estate after INSCORP became insolvent.

Initially, the Association moved for summary disposition, asserting that the estate failed to present a claim, or that, alternatively, the claim was barred by the one-year back rule, the applicable statute of limitations, or the doctrine of latches. The trial court, however, denied the motion for summary disposition and the Association's subsequent motion for reconsideration. Thereafter, the estate filed a motion for summary disposition, arguing that the trial court had sufficient evidence to determine that there were no issues of material fact as to the Association's liability and that the Association could not raise any valid defense to the claim that it wrongfully failed to pay the amount due. In a written order, the trial court granted the motion.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The Association argues that the trial court erred by granting the estate's motion for summary disposition because the estate never presented it with a claim. Alternatively, it asserts that any claim for no-fault benefits is barred by the no-fault act, MCL 500.3101 *et seq.*, specifically, the one-year-back rule, MCL 500.3145. The Association additionally argues that summary disposition was improper because any claim based on the settlement agreement is barred by the six-year statute of limitations applicable for breach of contract actions, MCL 600.5807(8), or by the doctrine of latches.

This Court reviews de novo the grant or denial of summary disposition motions. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition motions brought under MCR 2.116(C)(10) test the factual sufficiency of the complaint, *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012), and it may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When deciding a motion for summary disposition brought under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party. *Maiden*, 461 Mich at 120. All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "If, after reviewing the evidence, reasonable people could differ, the question properly is left to the trier of fact." *Mull v Equitable Life Assurance Society of the United States*, 196 Mich App 411, 421; 493 NW2d 447 (1992).

### B. ANALYSIS

The Association "has a duty to pay obligations of insolvent insurers that come within the act's definition of covered claims." *Oakland County Bd v Mich Prop & Cas Guar Ass'n*, 456 Mich 590, 594; 575 NW2d 751 (1998). Under the Property and Casualty Guaranty Act:

(1) "Covered claims" means obligations of an insolvent insurer that meet all of the following requirements:

(a) Arise out of the insurance policy contracts of the insolvent insurer issued to residents of this state or are payable to residents of this state on behalf of insureds of the insolvent insurer.

(b) Were unpaid by the insolvent insurer.

(c) Are presented as a claim to the receiver in this state or the association on or before the last date fixed for the filing of claims in the domiciliary delinquency proceedings.

(d) Were incurred or existed before, at the time of, or within 30 days after the date the receiver was appointed.

(e) Arise out of policy contracts of the insolvent insurer issued for all kinds of insurance except life and disability insurance.

(f) Arise out of insurance policy contracts issued on or before the last date on which the insolvent insurer was a member insurer. [MCL 500.7925.]

Here, it is undisputed that the estate's claim arose from an automobile insurance policy contract issued by INSCORP, a member insurer, while it was solvent. Therefore, the requirements in subsections (a), (e) and (f) are satisfied. Next, both the contract and the claim were in existence before the commencement of the New York liquidation proceedings, thereby satisfying subsection (d). Subsection (b) is also satisfied because the settlement agreement was entered into while INSCORP was still solvent, but the settlement amount—$75,000—was not paid before INSCORP became insolvent. Therefore, the only question is whether subsection (c) was satisfied.

The Association argues that the estate's claim cannot satisfy the requirement in subsection (c) because the estate never presented "a claim" to the Association "before the last date fixed for the filing of claims in the domiciliary delinquency proceedings." However, the Association received two letters from the estate. In the first letter—which was addressed to the New York Liquidation Bureau and copied to the Association—the estate explained that its claim for no-fault benefits was settled for $75,000 and that a judgment in that amount had been entered by the circuit court in January 2010. In addition, the letter expressly stated that Hassan had died, so the release was signed by his estate's personal representative. In the second letter, which was addressed to the Association's lawyer, the estate attached numerous documents outlining and supporting its original claim against INSCORP, the details of the settlement agreement, and the details of the January 2010 judgment against INSCORP. The combined effect of the letters and their supporting documentation was sufficient to constitute a "presented claim" under MCL 500.7925(1)(c) because it demonstrated that the claim was for no-fault benefits that INSCORP had lawfully agreed to pay pursuant to a settlement agreement. Moreover, the documents also

established that Hassan had died before the settlement agreement and release were finalized in 2009, which meant that, by 2011, any claims the estate may have had against other, lower priority, no-fault insurers would be barred by the one-year back rule, MCL 500.3145.[1] Accordingly, because all the requirements of MCL 500.7925 are satisfied, the estate clearly presented a covered claim to the Association and summary disposition was not improper on this basis.[2]

The Association argues that even if the estate presented a claim, it is barred by the one-year-back rule, which provides:

> (1) An action for recovery of personal protection insurance [PIP] benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written

---

[1] MCL 500.7931(3) provides:

> (3) If damages or benefits *are recoverable* by a claimant other than from any disability policy or life insurance policy owned or paid for by the claimant or by a claimant or insured under an insurance policy other than a policy of the insolvent insurer, or under a self-insured program of a self-insured entity, the damages or benefits recoverable shall be a credit against a covered claim payable under this chapter. . . . [Emphasis added.]

Because the damages or benefits must be "recoverable," and because the one-year-back rule prohibits the recovery of no-fault benefits against other no-fault insurers under the circumstances of this case, we do not find the Association's reliance on the estate's failure to provide information about other no-fault insurers to be relevant to whether a covered claim was issued in the first instance. Moreover, MCL 500.7931(3) also provides that if the Association pays a claimant an amount "in excess of the amount authorized by this section" the excess amount "may be recovered by an action brought by the association." Therefore, even if there is another insurer with a higher priority than the Association (but a lower priority than INSCORP), the Association may nevertheless bring an action to recover those amounts.

[2] We note that under MCL 500.7931(2), the Association "shall be a party in interest in all proceedings involving a covered claim and shall have the same rights as the insolvent insurer would have had if not in receivership, including the right to appear, defend and appeal a claim . . . and to investigate, adjust, compromise, settle, and pay a covered claim . . . ." However, contrary to the Association's contention on appeal, we do not agree that this section gives the Association the right to investigate the underlying claim. Rather, it only had the same rights as INSCORP would have had, which under the circumstances, did not include the right to negate the settlement agreement it reached and re-investigate the merits of the underlying claim. Therefore, although the Association suggests it required more information in order to assess the claim, given the limited nature of its investigatory powers, we decline to find the denial of the claim proper on the grounds that the estate did not submit all the forms that the Association requested in its letters.

notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefor, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury. [MCL 500.3145.]

This rule "limits recovery of PIP benefits to those incurred within one year before the date on which the no-fault action was commenced." *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 406; 751 NW2d 443 (2008). Here, the automobile accident giving rise to Hassan's injuries occurred on June 17, 2002, he received benefits until 2007, and he died on March 1, 2008. The estate did not commence the present suit until 2015. The Association contends that, because the most recent allowable expense would necessarily have to have been incurred on or before March 1, 2008, the date Hassan died, the present claim, which was filed over six years later, is completely barred. However, "the one-year-back rule applies only to actions brought under the no-fault act . . . ." *It*. at 407. The present action against the Association seeks benefits under the Property and Casualty Guaranty Association Act, not the no-fault act. Therefore, the one-year-back rules does not apply.

The Association next argues that the settlement agreement between Hassan and INSCORP is void because the March 4, 2010 Order of Liquidation included a provision that "all contracts and agreements. . . shall terminate and all liability thereunder shall cease." However, the record reflects that on January 22, 2010—before the order of liquidation was entered—the circuit court entered a judgment for the estate and against INSCORP in the amount of $75,000.00. Judgments entered by courts are final and binding. *Staple v Staple*, 241 Mich App 562, 564; 616 NW2d 219 (2000). And, although the judgment was entered in violation of the New York injunction, there is no court order setting it aside. See MCR 2.612(C).

The estate's claim is also not barred by the statute of limitations or by the doctrine of latches. The Association asserts that because this is a claim for a breach of a settlement agreement, the six-year limitations period for contract actions is applicable and bars the present suit.[3] However, in this case, a $75,000 judgment for the estate was entered against INSCORP in 2010. Claims to enforce a judgment are classified as "noncontractual money obligations" and

---

[3] A six-year statutory period of limitations exists for ordinary breach of contract claims. *Peabody v DiMeglio*, 306 Mich App 397, 404; 856 NW2d 245 (2014); MCL 600.5807(8). Settlement agreements are construed as binding contracts. *Reicher v SET Enterprises, Inc*, 283 Mich App 657, 665; 770 NW2d 902 (2009).

carry a 10-year statutory period of limitations.  *Peabody v DiMeglio*, 306 Mich App 397, 407; 856 NW2d 245 (2014); MCL 600.5809(3).  Accordingly, given that the judgment was entered on January 22, 2010 and the complaint against the Association was filed on March 9, 2015, the estate's claim is not barred by the statute of limitations.  For the same reason, we reject the Association's contention that the estate's claim is barred by the doctrine of latches.  See *Lothian v City of Detroit*, 414 Mich 160, 169-170; 324 NW2d 9 (1982) (stating that when a claim is barred at law it must also be barred in equity to prevent parties from evading forums).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly