*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GERALD F. JOHNSON REVOCABLE TRUST.

---

BARBARA J. JOHNSON,

   Appellant,

v

MONICA SHAFFER, SUZANNE JONIK, KEVIN HAWKINS, NOVI SPRING, INC., and JUDITH JOHNSON, Individually and as Successor Trustee of the GERALD F. JOHNSON REVOCABLE TRUST,

   Appellees.

UNPUBLISHED
June 17, 2021

No. 351134
Livingston Probate Court
LC No. 2019-018815-TV

---

Before: JANSEN, P.J., and M. J. KELLY and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this probate action involving the decedent's trust, petitioner, Barbara J. Johnson, appeals by right the Livingston Probate Court's order granting the trustee's motion to summarily dismiss petitioner's petition seeking the assignment of common stock. For the reasons stated in this appeal, we affirm.

## I. BASIC FACTS

Petitioner is the ex-wife of decedent Gerald F. Johnson. She and Gerald divorced in 2008, and, as part of that divorce, they executed a Settlement Agreement distributing the marital assets and setting petitioner's spousal support at $10,000 per month.

Gerald owned stock in Novi Springs, Inc., and it is this stock that is the subject of this appeal. The stock was awarded to Gerald as part of the Settlement Agreement, and he held it in a revocable trust until he died in 2017. After litigation separate from the present case and in accordance with the trust's terms, the trustee, Judith Johnson, transferred the stock to respondents

-1-

Monica Shaffer, Suzanne Jonik, and Kevin Hawkins. Petitioner contends that she should be able to reach this stock for continued spousal support after Gerald's death, and she filed her petition in Livingston Probate Court requesting that the stock be returned to the trust pending ongoing litigation in the Wayne County Circuit Court addressing modification of spousal support. The probate court, however, determined that pursuant to the plain terms of the Settlement Agreement, Gerald received the stock as his separate property and petitioner waived any claim that she might have against it. Further, because petitioner had no claim to the stock, she failed to state a claim upon which relief could be granted, i.e., she had no valid claim to have the stock returned to the trust. The court, therefore, summarily dismissed her petition.

## II. WAIVER

### A. STANDARD OF REVIEW

Petitioner argues that the probate court erred by summarily dismissing her petition. We review de novo a trial court's decision to grant summary disposition. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Primarily, however, the issue on appeal is one of contract interpretation. Petitioner challenges the probate court's determination that, as part of petitioner's divorce from Gerald, the Novi Springs stock was awarded to Gerald via a consent settlement agreement free and clear as a separate asset and that petitioner waived all future claim to that stock pursuant to that agreement. She also argues that the stock, which has since been distributed from Gerald's trust to certain respondents, should be returned to the trust in order to meet potential continued spousal support obligations.[1] A divorce settlement between the parties represents a contract, *Lueck v Lueck*, 328 Mich App 399, 404; 937 NW2d 729 (2019), and this Court reviews de novo the trial court's interpretation of a contract, *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). Questions of law are reviewed de novo. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "The definition of a waiver is a question of law, but whether the facts of a particular case constitute a waiver is a question of fact." *Reed Estate v Reed*, 293 Mich App 168, 173; 810 NW2d 284 (2011) (quotation marks and citation omitted). Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. *Id*. Clear error occurs "when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Id*. at 173-174 (quotation marks and citation omitted).

### B. ANALYSIS

Whether a contract is ambiguous is a question of law. *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). If it is unambiguous, then its interpretation is a question of law. *Id*. However, if the contract is susceptible to one or more reasonable interpretations or otherwise unclear, then it is ambiguous, and its meaning is a question of fact. *Id*. When interpreting a contract, it "should be read as a whole, with meaning given to all of its terms." *Detroit Pub Sch v Conn*, 308 Mich App 234, 252; 863 NW2d 373 (2014). Moreover, it "must be interpreted according to its plain and ordinary meaning." *Wells Fargo Bank, NA v*

---

[1] Whether spousal support will continue is the subject of the proceeding in the Wayne County Circuit Court.

*Cherryland Mall Ltd Partnership (On Remand)*, 300 Mich App 361, 386; 835 NW2d 593 (2013) (quotation marks and citation omitted).

"When parties have freely established their mutual rights and obligations through the formation of unambiguous contracts, the law requires this Court to enforce the terms and conditions contained in such contracts, if the contract is not 'contrary to public policy.' " *Id*. (quotation marks, citations, and brackets omitted). "[S]pecific provisions normally override general ones." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 719; 706 NW2d 426 (2005). When a divorce settlement agreement is merged into the judgment of divorce, it "loses its separate identity as an enforceable contract when it is incorporated into a court order." *Peabody v DiMeglio*, 306 Mich App 397, 407; 856 NW2d 245 (2014) (quotation marks and citation omitted). This is in contrast to when the agreement is incorporated by reference; in such an instance, the "secondary document [becomes] part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained in the primary one." *Id*. at 406-407 (quotation marks and citation omitted). When incorporated by reference instead of merged, the separate document is separate and enforceable in its own right. *Id*. at 407. In the present case, the Settlement Agreement was incorporated, but not merged; therefore, it must be treated as a separate and enforceable contract.

Paragraph 4.D of the Settlement Agreement provides:

[Gerald] shall have as his *sole and separate property, free of any claim thereto* by [petitioner], *except as hereinafter stated to the contrary*, the following assets, subject to any and all debts which he shall and does assume and pay and hold [petitioner] harmless thereon and [petitioner] will provide any necessary signatures thereon:

1. All of his right, title and/or interest in a business known as Novi Spring, Inc. located in Brighton, Michigan, including but not by way of limitation, *all stock therein*, contents, licenses and the real estate where it is located. [Emphasis added.]

This provision is unambiguous. Gerald and petitioner agreed that Gerald would retain as his separate property the Novi Spring stock, and this stock would be free of any claim related to the divorce that petitioner could bring against it. The word "hereinafter" denotes that there must be contrary provisions *after* Paragraph 4.D. Yet, there is no exception listed for the stock. Consequently, the stock was a separately awarded asset.

Relying on the plain language of the Settlement Agreement, the probate court held that petitioner waived any interest in Gerald's separately awarded assets. As explained by this Court, in *Reed*, 293 Mich App at 176:

[A]t its most basic, a " '[w]aiver is the intentional relinquishment of a known right' " that "may be shown by express declarations or by declarations that manifest the parties' intent and purpose." The recognized definition of the term "waiver" is "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage. . . . The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." To effectuate

a valid waiver, "no magic language" need be used. "Rather . . . a waiver must simply be explicit, voluntary, and made in good faith." In order to ascertain whether a waiver exists, a court must determine if a reasonable person would have understood that he or she was waiving the interest in question. [Alterations in original; citations omitted.]

Here, Paragraph 4.J of the Settlement Agreement provides:

[Gerald] shall retain as *his sole and separate property and be free of any claim from [petitioner]* (except which is hereinafter stated to the contrary), all of the other assets of the parties, including, but not by way of limitation, all the business interests, real estate, savings and/or checking accounts, boats, cars, motor-homes, and/or other properties not herein otherwise awarded and divided between the parties.

Similarly, Paragraph 4.L, provides:

Except as hereinabove provided, each of the parties shall . . . all items of real and personal property (tangible or intangible) now or . . . his or her possession, or in his or her name, with full power to him or her to dispose of same as fully and effectively, in all respects and for all purposes as though he or she were unmarried.

The language plainly provides that Gerald's separately awarded assets are his free of any claims by petitioner and that he has full power to dispose of that property as if he were unmarried. Further, these subparagraphs are clearly "catch-all" provisions *within* Paragraph 4 that address those items not explicitly referenced in the preceding subparagraphs. Paragraph 4.J is a catch-all provision for Gerald. Paragraph 4.L is a catch-all provision that addresses both Gerald and petitioner and makes clear that the property retained by them is within their full individual power and that they are free to do with it as they so choose. There is no explicit provision specifying that the Novi Spring stock was not Gerald's sole and individual property. And, contrary to petitioner's contention, there is no indication that this language applies to anything other than Paragraph 4. Therefore, petitioner's agreement to Paragraph 4 constituted an intentional and express relinquishment of petitioner's rights to the stock, and its plain language supports her intent to waive claims to the stock. See *Reed*, 293 Mich App at 176.

To avoid the waiver language in Paragraph 4, petitioner relies on Paragraph 11 of the Settlement Agreement, which provides:

Except as otherwise herein expressly provided, the parties shall and do hereby mutually remise, release and forever discharge each other from any and all actions, suits, debts, claims, demands and obligations whatsoever both in law and in equity which either of them ever had, now has or may hereafter have against the other, upon or by reason of any matter, cause or thing *up to the date of the execution of this Agreement*. [Emphasis added; capitalization removed.]

Petitioner appears to argue that this language meant that all of the preceding provisions applied *only* to claims up to the time of the Settlement Agreement's execution. She points to the language, "Except as otherwise herein expressly provided," and appears to contend that, because Paragraphs

4.D, 4.J, and 4.L do not *expressly* state that they apply to all claims *after* the time of the Settlement Agreement's execution, this means that petitioner waived only those claims to the stock at the time of the Settlement Agreement's execution. We disagree. The cited language applies to the *entire* Paragraph 11. In other words, the language means that, except as stated otherwise, the parties agree to release each other forever from claims for those things at the time of the Settlement Agreement. There is no indication that this provision somehow modifies or alters those in Paragraphs 4.D, 4.J, or 4.L, which are in two entirely separate areas. Paragraph 4 addresses *property* division and individually held assets, not claims leading up to the time of the Agreement. Paragraph 11 stands on its own and addresses claims leading up to the judgment of divorce.

Petitioner also argues that Paragraph 11 is a more specific provision that controls over Paragraphs 4.D, 4.J, or 4.L. However, paragraphs 4.D, 4.J, and 4.L are *specific* subparagraphs that *specifically* address the property division and how certain assets are treated. Paragraph 11, in contrast, is a *general* catch-all type provision addressing any claims not specifically addressed previously. Paragraphs 4.D, 4.J, and 4.L are more specific and, therefore, control.

Next, petitioner also contends that, even if she did make such a waiver in the Agreement, such a waiver would be invalid and violate public policy. We disagree. In *Staple v Staple*, 241 Mich App 562, 568; 616 NW2d 219 (2000), this Court expressly held that parties in a divorce settlement agreement can waive their statutory rights regarding spousal support. "If the parties to a divorce agree to waive the right to petition for modification of alimony, and agree that the alimony provision is binding and nonmodifiable, and this agreement is contained in the judgment of divorce, their agreement will constitute a binding waiver of rights . . . ." *Id*. Although the present case does not involve the waiver of spousal support, *Staple* is instructive because Michigan law permits divorcing parties to contractually waive statutory rights such as spousal support. In light of such an extreme waiver, it follows that a party can contract away claims to a particular asset, i.e., stock.

Similarly, in *Reed*, 293 Mich App at 181, this Court held that the defendant's "waiver of her rights to any of the decedent's benefits is valid and enforceable." The defendant and the decedent divorced, and, relevant to the appeal, the judgment of divorce contained provisions purporting to award pension plans to each party "free and clear from any claim by the other." *Id*. at 170-171. This Court framed the crux of the issue as "the validity of the waiver provision contained in the divorce judgment." *Id*. at 176. Although the defendant had not participated in the divorce proceedings despite knowledge of them, and this Court first determined that the defendant's actions constituted a waiver. *Id*. at 176-177. This Court reasoned that the defendant's "course of conduct evidenced her intention to waive any rights." *Id*. at 181. *Reed* involved an adversarial judgment of divorce and the defendant's lack of involvement in the proceedings, and, yet, this Court upheld the waiver. The present case is much stronger in that petitioner was involved in the creation of the Settlement Agreement and had the assistance of a lawyer. This process was nonadversarial. And, like the waiver in *Reed*, the waiver in this case employed similar language, i.e. that an asset was awarded free and clear from any claim by the other party.

We also find instructive this Court's decision in *Lentz v Lentz*, 271 Mich App 465, 477-478; 721 NW2d 861 (2006), which held that separation agreements are favored by public policy, enforceable, and "best effectuate the intent and needs of the parties." This Court stated that it would "not rewrite or abrogate an unambiguous agreement negotiated and signed by consenting

adults by imposing a 'reasonable' or 'equitable' inquiry on the enforceability of such agreements," reasoning that "[a]n application of general contract principles to this agreement mandates only one conclusion: the parties freely entered into an agreement to divide their property as they saw fit, and we will not redraft the agreement or rule in a manner that allows either party to avoid his or her contractual obligations." *Id*. at 478. Without evidence of fraud, duress, or mistake, "the parties entered into a valid, enforceable contract that must be affirmed under general contract principles." *Id*. In a footnote, this Court also rejected the defendant's position that "her waiver of alimony is invalid as a matter of law," stating that a trial court had discretion whether to award spousal support but that there was no requirement to do so. *Id*. at 478 n 7.

In light of such caselaw, we discern no support for petitioner's contention that her waiver was invalid as a matter of law or public policy. This Court has consistently upheld waivers within both judgments of divorce and separation agreements. Additionally, this Court has upheld the waiver of spousal support as a whole. In this case, the Settlement Agreement did not purport to go this far. Instead, by agreeing to it, petitioner merely waived her claim to the Novi Spring stock. Given that petitioner was represented by her own lawyer, and there is no evidence or allegation of fraud, duress, or mistake, there is simply no basis for finding her waiver of any interest in the stock to be against public policy.

We also find unpersuasive petitioner's attempts to analogize *Allard v Allard*, 318 Mich App 583; 899 NW2d 420 (2017). *Allard* did not involve whether a divorce settlement agreement could waive a party's claims to a particular asset; rather, *Allard* addressed an antenuptial agreement and whether such an agreement could completely waive the trial court's statutorily granted authority to effectuate a fair and equitable divorce. *Id*. at 587, 603. This Court addressed whether "parties can, by way of an *antenuptial agreement*, divest a circuit court of its *statutory authority to effectuate an equitable settlement* by 'invading' separate assets under" relevant statutes. *Allard*, 318 Mich App at 598 (emphasis added). This Court held that parties may not waive the trial court's discretion to equitably divide the marital estate. *Id*. at 603. The present case does not involve an antenuptial agreement, the initial division of assets in the divorce, or an attempt to prohibit the trial court from dividing the estate equitably upon divorce. Rather, this case involves a divorce settlement agreement and the release of petitioner's claims to the Novi Spring stock. The divorce has already occurred, and the assets have already been divided. There was no attempt to limit the court's power. Consequently, *Allard* is inapposite.

Next, petitioner contends that *Luckow v Luckow*, 291 Mich App 417; 805 NW2d 453 (2011) did not categorically bar her claim. The *Luckow* Court stated that a court "need not" invade separately awarded assets for purposes of spousal support. *Id*. at 428. This language suggests that this is not a categorical ban; rather, the language suggests it is within the trial court's discretion to do so. We agree that *Luckow* supports the position that a court *may* invade separate assets—if equity demands it—for spousal support obligations, but it also supports that a party has no *right* to invade such assets. *Id*. However, we disagree that *Luckow* is useful to the resolution of the issues raised in this appeal. *Luckow*'s holding is directed at issues surrounding spousal support. And, although petitioner has claims related to spousal support, those issues are pending in the Wayne County Circuit Court. Accordingly, petitioner's *Luckow* argument appears to be best suited for those proceedings and is inapposite to the present case.

## III.  CONCLUSION

In sum, the Settlement Agreement's plain language awarded the stock as a separate asset to Gerald free and clear, and petitioner waived her claims to the stock by agreeing that Gerald would receive it free of any claim from petitioner.  In light of this, petitioner had no valid claim to have the stock returned to the trust.  Consequently, the probate court did not err by summarily dismissing petitioner's petition to have the stock returned to the trust.[2]

Affirmed.  Appellees may tax costs as the prevailing parties.  MCR 7.219(A).

/s/ Kathleen Jansen
/s/ Michael J. Kelly
/s/ Amy Ronayne Krause

---

[2] Given our conclusion that petitioner waived any claim to the stock and therefore had no valid basis to demand its return to the trust, we decline to address whether the stock could, in fact, be returned after it was distributed pursuant to separate litigation in a different court.