*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY HELEN LABRIE,

     Plaintiff-Appellant,

v

THOMAS WILLIAM LABRIE,

     Defendant-Appellee.

UNPUBLISHED
June 25, 2019

No. 344339
Lapeer Circuit Court
Family Division
LC No. 2017-050801-DM

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

Plaintiff appeals as of right from an amended judgment of divorce. We vacate in part, specifically the portions of the amended judgment of divorce concerning spousal support, the division of the life insurance policy, and attorney fees, and we remand for further proceedings.

Plaintiff and defendant were married in October 1995. At the time of their divorce in 2018, plaintiff was 58 years old, and defendant was 65 years old. The parties have two children, one of whom was a minor at the time of the divorce. Plaintiff quit her job as a nurse when she married defendant in 1995. Until the parties divorced, plaintiff was solely responsible for raising the children, including homeschooling both children. Plaintiff was also solely responsible for taking care of the parties' domestic affairs while defendant worked as a millwright for an automobile company. At age 49, defendant was diagnosed with non-Hodgkins lymphoma. Plaintiff cared for defendant until his lymphoma went into remission. Defendant returned to work for a brief period, but later decided to take an early retirement. At the time of their divorce, the parties were living solely on defendant's pension and Social Security payments, which totaled approximately $3,200 per month. Plaintiff sought a divorce based on abusive behavior exhibited toward her by defendant over the course of their marriage. Plaintiff attempted to obtain a personal protection order ("PPO") against defendant. It is unclear whether plaintiff succeeded in obtaining a PPO, but she later successfully obtained a civil restraining order against defendant. Plaintiff moved out of the marital home in March 2017, and the parties' divorce was finalized in June 2018. This appeal followed.

# I. SPOUSAL SUPPORT

Plaintiff argues that the trial court erred by failing to clearly state whether the spousal support award was periodic or in gross, and, in either event, by failing to award plaintiff permanent spousal support. We agree that the trial court erred by failing to articulate whether it intended to award periodic spousal support or spousal support in gross, and find that the trial court did not properly consider applicable facts and law pertaining to the spousal support award, including whether plaintiff should have been awarded permanent spousal support.

This Court "review[s] a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). The trial court's factual findings are reviewed for clear error. *Id*. "If the trial court's findings are not clearly erroneous, [this Court] must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Id*. The trial court's ruling must be affirmed unless this Court is "convinced that it was inequitable." *Id*.

The object of a spousal support award is to "balance the incomes and needs of the parties in a way that will not impoverish either party, on the basis of what is just and reasonable under the circumstances of the case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted). The trial court may award either periodic spousal support or spousal support in gross. *Bonfiglio v Pring*, 202 Mich App 61, 63-64; 507 NW2d 759 (1993). As the name implies, periodic spousal support payments are made on a periodic basis. *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). Periodic spousal support payments "are subject to any contingency, such as death or remarriage of a spouse," whereas spousal support in gross is paid as "a lump sum or a definite sum to be paid in installments." *Id*. In addition, one major difference between the two types of spousal support is modifiability. Spousal support in gross is nonmodifiable, whereas periodic spousal support is subject to modification pursuant to MCL 555.28.[1] *Bonfiglio*, 202 Mich App at 63.

Plaintiff argues that the trial court did not clearly state whether it was awarding her periodic spousal support or spousal support in gross. When making its ruling regarding spousal support, the trial court stated as follows:

---

[1] MCL 552.28 states in full that, "[o]n petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to Section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action."

The [c]ourt finds the amount that has been agreed to by the parties, $750 a month, is an appropriate amount [of spousal support]. And the [c]ourt will award that for two years.

* * *

[H]alf of [the life insurance policy] is awarded to the plaintiff. The other half I'm going to award to the plaintiff [as] alimony in gross; and therefore, the defendant won't have to pay $750 a month. We're going to award the entire insurance policy to the plaintiff, $38,000, and that is going to include whatever share of it is hers and alimony in gross. And that will allow the defendant to have his full income of about $3,200 a month to survive on, and yet the plaintiff will have in effect the amount of spousal support, the extra $19,000 to help her get on her feet, refresh her degree, do whatever she's got to do.

In an effort to seek clarification on the issue of spousal support, this Court also reviewed the judgment of divorce, since the trial court " 'speaks through its written orders and judgments, not through its oral pronouncements.' " *Cassidy v Cassidy*, 318 Mich App 463, 509; 899 NW2d 65 (2017), quoting *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). However, the judgment of divorce is unclear regarding whether the spousal support award is intended to be periodic or in gross. The judgment of divorce states:

Defendant . . . shall pay to [p]laintiff . . . modifiable spousal support . . . in the form of a lump sum payment. Said lump sum shall be taken from [d]efendant['s] . . . fifty (50%) percent portion of the Knight's [sic] of Columbus Whole Life Insurance policy, valued at approximately Nineteen Thousand One Hundred Seventeen and 75/100 ($19,117.75). Spousal support is taxable to [p]laintiff and deductible to [d]efendant.

It is difficult to fully discern whether the trial court meant to award periodic spousal support or spousal support in gross. The trial court complicated the issue by first stating that it would award plaintiff a spousal support award of $750 per month for two years. In what appears to be an attempt to allow defendant to forgo paying plaintiff spousal support in the amount of $750 per month, the trial court chose to grant plaintiff an award of $19,117.75, which was the monetary equivalent of defendant's share of the $38,000 life insurance policy. In explaining its ruling, the trial court attempted to clarify that the lump sum it intended to award to plaintiff, purportedly as alimony in gross, was approximately equivalent to two years of periodic spousal support payments of $750 per month. Thus, it appears that the trial court was attempting to create a single resolution for both the spousal support issue and the issue of dividing the life insurance policy between the parties by relabeling the share of the life insurance policy that otherwise would have been awarded to defendant in the division of marital assets as "spousal support," and granting it to plaintiff in lieu of making a separate spousal support award.

It is apparent that the trial court misstated the spousal support award and miscomprehended the characteristics of each type of spousal support. For instance, the use of the term "modifiable" in the judgment of divorce, in reference to a lump sum payment, complicates whether the spousal support award was intended to be periodic or in gross. If the spousal support award was intended to be spousal support in gross, it cannot also be modifiable,

-3-

given that one of the hallmarks of spousal support in gross is the fact that such awards are nonmodifiable. *Bonfiglio*, 202 Mich App at 63. Additionally, the judgment of divorce indicates that the "modifiable" lump sum payment is taxable, which is a characteristic exclusive to periodic spousal support awards. "[A]limony in gross is not a taxable event to the payee. However, periodic alimony is taxable to the payee." *Friend v Friend*, 486 Mich 1035; 783 NW2d 122 (2010). Accordingly, this issue must be remanded. On remand, the trial court is to fully clarify whether it intended to award periodic spousal support or spousal support in gross. In the event that the trial court intended to award spousal support in gross, it should make an administrative correction to the amended judgment of divorce indicating that the award of spousal support in gross is nonmodifiable and not taxable to plaintiff, the payee.

Plaintiff also argues that, regardless whether the trial court intended the spousal support award to be periodic or in gross, the trial court abused its discretion by failing to award her *permanent* spousal support. Although it is unclear whether the trial court intended to award periodic spousal support or spousal support in gross, it is obvious that neither award constitutes permanent spousal support. This Court reviewed the record and concludes that the trial court failed to make factual findings or made incorrect factual findings and incorrect conclusions of law that merit reconsideration of the spousal support award.

This Court has set forth a number of factors to be considered by the trial court when awarding spousal support. *Myland*, 290 Mich App at 695. These factors include:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

The trial court is not required to make findings regarding every factor, but "should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003).

In plaintiff's case, the record discloses that the trial court failed to make reviewable factual findings regarding certain factors. The trial court established that defendant's monthly income was approximately $3,200, or $38,000 per year. The trial court also considered the parties ages and education, and found that plaintiff, who was 58 and had a nursing degree at the time of the divorce, was younger and more highly educated than defendant, who was 65 and had no higher education. The trial court observed that plaintiff's educational background implied that she could find a well-paying job as a nurse, whereas defendant was retired and had no job prospects. The trial court further stated that defendant had a number of health complications, including hypoglycemia, which made it difficult for him to maintain a job because he could not work for more than three hours at a time. Additionally, the trial court considered the length of the marriage, noting that the parties were married for 23 years. The trial court concluded that,

although it was a close issue, it would grant plaintiff rehabilitative spousal support to allow her to "get on her feet, refresh her degree, do whatever she's got to do."

Plaintiff first takes issue with the trial court's lack of factual findings under factors (1) and (2), regarding the past relations and conduct of the parties, as well as the length of the marriage. *Olson*, 256 Mich App at 631. Plaintiff's argument regarding factor (1) also implicates the trial court's findings pursuant to factor (12), pertaining to the parties' respective fault in causing the divorce. *Id*. With regard to factor (1), plaintiff contends that the trial court failed to consider defendant's past conduct, particularly the fact that defendant's abusive behavior made plaintiff fearful of him, such that she took steps to obtain a PPO and a civil restraining order against him. Conversely, there was no evidence that plaintiff was violent or abusive toward defendant. Concerning factors (1) and (2), plaintiff also argues that the trial court failed to acknowledge that plaintiff was a stay-at-home mother who was primarily responsible for raising and homeschooling the children, as well as caring for the parties' domestic affairs, for the duration of their 23-year marriage. Additionally, regarding factor (12), the record clearly indicated that defendant's abusive behavior was the impetus for the divorce, and that he bears the greater part of the fault for causing the divorce. Plaintiff correctly observes that, beyond acknowledging that the parties were married for 23 years, the trial court made no reviewable analysis of these factors, nor was it apparent that the trial court appropriately considered these factors in weighing the equitability of spousal support.

Plaintiff also takes issue with the trial court's treatment of factors related to the parties' income and ability to work under factor (3). *Olson*, 256 Mich App at 631. Plaintiff contends that, although the trial court properly noted that defendant's income is approximately $3,200 per month, the trial court did not take into consideration the fact that plaintiff receives no income outside of what defendant brought into the marriage. Plaintiff testified that she had no personal income and had not been employed for 23 years because she was a stay-at-home mother, but the trial court did not acknowledge these facts or take them into consideration when crafting its spousal support award. Plaintiff correctly argues that the trial court made no reviewable findings of fact regarding factor (3) and did not appear to consider plaintiff's testimony that she was a stay-at-home mother for 23 years in determining the type of spousal support award was appropriate herein.

With regard to factor (3), plaintiff also contends that the trial court erred by imputing $20,000 to plaintiff on the basis of her testimony that "there [was] no reason she can't work." "The voluntary reduction of income may be considered in determining the proper amount of alimony. If . . . a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award." *Moore v Moore*, 242 Mich App 652, 655; 619 NW2d 723 (2000), citing *Healy v Healy*, 175 Mich App 187, 191; 437 NW2d 355 (1989). However, a trial court "must . . . protect those who have been dependent on their spouse for support, especially where the couple decided that one would be the 'bread winner' and one the 'home maker.'" *Healy*, 175 Mich App at 191-192.

Imputation of income often occurs when a party intentionally reduces or eliminates his or her income in an attempt to avoid paying spousal support, or attempting to obtain spousal support. *Id*. There is no evidence of such behavior in this case. Plaintiff, who is now a 59-year-old woman, has no independent income because she is and has been a stay-at-home mother. It must be emphasized that plaintiff's status as a stay-at-home mother was the product of an

agreement made with defendant at the onset of their marriage. Plaintiff and defendant jointly agreed that plaintiff should quit her job and become a stay-at-home mother while defendant worked outside the home. Plaintiff remained unemployed and had no job prospects for the duration of her 23-year marriage to defendant because she stayed at home to care for the parties' children and their house while defendant worked outside the home. Plaintiff has been reliant on defendant for the entirety of her marriage.

Further, no evidence was presented to show that plaintiff could actually earn an average of $20,000 of imputed income and chooses not to do so. Indeed, little evidence was shown to support the contention that plaintiff could readily obtain a job in the nursing field at all. The only evidence in the record pertaining to plaintiff's job prospects indicates that she attempted to apply for a job at an assisted living facility, but was not hired. Additionally, the record indicates that plaintiff received her nursing license in 1986. It is unclear whether the training that plaintiff received in order to become a nurse more than 30 years ago would qualify her to renew her nursing license without further training or education in 2019. The trial court gave little consideration to the fact that returning to the field of nursing may require a significant amount of time and expense to plaintiff, who is nearing retirement age. Ultimately, the trial court erred by penalizing plaintiff for making the decision to leave the workforce and become a stay-at-home mother. Given plaintiff's lengthy absence from the workplace and her lack of income, there is not sufficient evidence in the record to support the imputation of $20,000 to plaintiff. Thus, it is not equitable to impute $20,000 to plaintiff in determining an appropriate spousal support award.

Additionally, plaintiff correctly argues that the trial court made an erroneous factual finding regarding plaintiff's potential earning capacity. In delivering its findings, the trial court stated "at the point [plaintiff] can become a registered nurse, she could make [$]65, $75,000 a year if she wants to. That's her choice." However, the record does not support this assertion. Neither party presented any evidence that plaintiff could earn between $65,000 and $75,000 per year as a registered nurse entering the field after a 23-year absence. Indeed, the parties did not discuss how much money plaintiff could potentially make as a registered nurse, or how much money she may potentially need to spend to update her professional credentials and renew her nursing license. The trial court clearly erred in finding that the denial of permanent spousal support was justified based on a finding that plaintiff could earn up to $75,000 as a registered nurse.

Plaintiff also contends that the trial court made no factual findings regarding the source and amount of property awarded to each party in the divorce under factor (4). *Olson*, 265 Mich App at 631. Regarding factor (4), plaintiff contends that the trial court made no factual findings regarding whether the source and amount of property awarded to each party favored plaintiff or defendant. This Court agrees, and finds that the trial court did not make any factual findings regarding whether the division of property in the divorce had any bearing on the spousal support determination.

Plaintiff next argues that the trial court did not properly consider the parties' ages or defendant's ability to pay spousal support under factors (5) and (6), respectively. *Id*. We disagree. The trial court found that the parties were 58 and 65 years of age, respectively, at the time of trial. The trial court also found that defendant's income was approximately $38,000 per year. The trial court opined that plaintiff, who was younger and more educated than defendant, would have an easier time finding employment than defendant. The trial court also stated that

defendant would be "impoverished" if forced to pay plaintiff $1,400 per month in spousal support. Thus, although plaintiff disagrees with the outcome, it is clear that the trial court made proper findings of fact regarding factors (5) and (6), and weighed them in determining spousal support.

Plaintiff also contends that the trial court made no factual findings regarding factors (7) and (8), pertaining to the present situation of the parties and their respective needs. *Olson*, 256 Mich App at 631. A review of the record indicates that the trial court made no factual findings pertaining to factor (7) or factor (8). The trial court did not make factual findings regarding the parties' financial situation under factor (7), including whether the division of property and the parties' respective income would be sufficient to provide for their needs under factor (8). The failure to make proper factual findings under factors (7) and (8) also necessarily implicates factor (10), regarding the parties' prior standard of living and responsibility for the support of others, such as their children. *Id*. The trial court failed to make findings regarding the parties' yearly income, expenses, and standard of living during the marriage. Further, the trial court made no factual findings regarding plaintiff's status as a stay-at-home mother, nor did it acknowledge that plaintiff would be primarily responsible for caring for their minor child, including attending to his homeschooling, after the divorce proceedings concluded. The trial court made no findings regarding whether homeschooling the parties' minor child and being his primary caretaker would have an impact on plaintiff's ability to maintain employment.

With regard to factor (9), concerning the parties' health and the impact of the parties' health on their day-to-day lives and ability to work, the trial court found that plaintiff was healthy and able to work, but that defendant, who was retired, had some health problems that made employment impossible for him. A review of the record indicates that these findings were not clearly erroneous, and the trial court properly weighed them in determining spousal support.

Plaintiff correctly argues that the trial court made inadequate findings pertaining to factor (11), regarding the parties' respective contributions to the joint estate. *Olson*, 256 Mich App at 631. The trial court noted on multiple occasions that defendant previously worked for an automobile company, but did not make any findings regarding his contribution to the parties' joint estate. Additionally, the trial court made no factual findings regarding plaintiff's contribution to the joint estate. Plaintiff contends that, although she was a stay-at-home mother, she contributed to the joint estate by sacrificing her career to take care of the parties' children so that defendant could work full time. Plaintiff supports this argument by directing this Court to *Hanaway v Hanaway*, 208 Mich App 278; 527 NW2d 792 (1995), in which this Court opined that a stay-at-home mother contributed to her marriage and joint estate by raising the parties' children and caring for their home, which allowed the defendant to grow his business over time. *Id*. at 293-294. Plaintiff correctly observes that her contributions to the joint estate as a stay-at-home mother for 23 years should have been addressed and weighed in the trial court's determination of spousal support.

Neither party disputes that the trial court did not err by failing to address factor (13), regarding the effect of cohabitation on each party's financial status because the factor did not apply. *Olson*, 256 Mich App at 631. However, plaintiff contends that the trial court erred by failing to consider the "general principles of equity" under factor (14). *Id*. Although the trial court appeared to attempt to craft an equitable spousal support award, it made no mention of the general principles of equity, nor did it discuss whether the general principles of equity weighed

in favor of one disposition or another. Accordingly, the trial court did not properly address factor (14).

Overall, this Court is not convinced that the spousal support award was created with equity in mind. It is clear that the trial court's spousal support award has multiple issues that require further examination. In light of the errors discussed herein, we vacate the trial court's spousal support award and direct the trial court to enter a new spousal support award of an appropriate monetary amount and duration in accordance with applicable law pertaining to the factors to be considered, the imputation of income, and the "general principles of equity." *Id*. Additionally, it appears that the trial court did not refer this case to the Friend of the Court for a spousal support calculation. On remand, the trial court should refer the case to the Friend of the Court and consider the Friend of the Court's spousal support calculation when crafting its own spousal support award.

## II. DIVISION OF MARITAL ASSETS

Plaintiff argues that, if the trial court intended to award her periodic spousal support, then it erred by failing to award her the total cash value of the life insurance policy in the division of the parties' marital property. Alternatively, plaintiff argues that, if the trial court awarded her spousal support in gross, then it properly awarded her the full cash value of the life insurance policy, but abused its discretion by failing to also award her permanent periodic spousal support. As discussed in Issue I above, the trial court was not clear regarding whether it intended to award periodic spousal support or spousal support in gross to plaintiff. Thus, plaintiff's second issue on appeal is difficult for this Court to analyze because the resolution of the issue is contingent, in part, on whether the trial court awarded periodic spousal support or spousal support in gross, which cannot be ascertained until the trial court has the opportunity to clarify its spousal support award on remand.

In analyzing a trial court's decision regarding the division of marital assets, this Court first reviews the trial court's factual findings. *Butler v Simmons-Butler*, 308 Mich App 195, 207; 863 NW2d 677 (2014). "Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Id*. at 208. A finding of fact is considered to be "clearly erroneous if, after a review of the entire record, the reviewing court is left with the definite and firm conviction that a mistake was made." *Id*. If the findings of fact are not clearly erroneous, "this Court must decide whether the dispositive ruling was fair and equitable in light of those facts." *Id*. The trial court's dispositional rulings are discretionary, and "will be affirmed unless this Court is left with a firm conviction that the division was inequitable." *Id*.

First, plaintiff argues that, if the trial court intended to award her periodic spousal support of $750 per month and misspoke regarding the division of the life insurance policy at trial, then it abused its discretion by failing to award her the full cash value of the $38,000 life insurance policy when dividing the parties' marital property. In general, marital property is defined as "that which is acquired or earned during the marriage . . . ." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). Plaintiff contends that, if the trial court granted her periodic spousal support, then it did not properly analyze whether she should also have received the total cash value of the life insurance policy based on the factors applicable to property division in divorce proceedings. In *Sparks v Sparks*, 440 Mich 141; 485 NW2d 893 (1992), the

Michigan Supreme Court stated that the following factors should be considered when distributing marital assets:

> (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. [*Sparks*, 440 Mich at 159-160.]

Generally, the trial court's "goal in distributing marital assets . . . is to reach an equitable distribution of property in light of all the circumstances." *Butler*, 308 Mich App at 209. The division of property "need not be mathematically equal, but any significant departure from congruence must be clearly explained." *Id*. The trial court is required to "make specific findings regarding the factors it determines to be relevant." *Id*. at 209 (quotation marks and citation omitted).

As previously stated, the trial court's discussion regarding the division of the life insurance policy is as follows:

> [H]alf of [the life insurance policy] is awarded to the plaintiff. The other half I'm going to award to the plaintiff [as] alimony in gross; and therefore, the defendant won't have to pay $750 a month. We're going to award the entire insurance policy to the plaintiff, $38,000, and that is going to include whatever share of it is hers and alimony in gross.

The judgment of divorce mentions the life insurance policy in the section pertaining to the division of personal property, and states that defendant will receive "[f]ifty (50%) percent of [d]efendant's Knight's [sic] of Columbus Whole Life Policy," but that "[d]efendant will cooperate in signing the entirety [of] said policy over to [p]laintiff as his fifty (50%) percent share in same has been awarded to [p]laintiff as alimony in gross, herein above)[.]"

In failing to separate the spousal support award from the distribution of the life insurance policy, the trial court has made it difficult to discern whether either issue was analyzed properly and equitably. In the event that the trial court intended to grant periodic spousal support, and mistakenly awarded spousal support in gross, then it is clear that the trial court made no effort to equitably divide the value of the life insurance policy by making factual findings pursuant to the factors set forth in *Sparks*. The trial court made no factual findings under *Sparks* when dividing the life insurance policy at all. Thus, this Court cannot analyze whether the life insurance policy was properly divided between the parties. Additionally, defendant argues that the life insurance policy was separate property, or property "earned before the marriage[.]" *Cunningham*, 289 Mich App 201. Defendant contends that the life insurance policy should not have been included as a marital asset. Defendant states that he also argued such in the trial court, but a review of the record indicates that he never expressly argued that the life insurance policy was separate property. Nevertheless, the trial court did not make any effort to justify the invasion and division of the life insurance policy, which was a separate asset received by defendant before he married plaintiff. "[S]eparate assets may lose their character as separate property and transform into marital property if they are comingled with marital assets and 'treated by the parties as marital property.'" *Id*. (citation omitted). However, the trial court did not explain its rationale for

-9-

including the policy as a marital asset subject to division. Therefore, when the trial court clarifies on remand whether it intended to award periodic spousal support, then it should also analyze the distribution of the life insurance policy as marital property by making appropriate factual findings under *Sparks*, and determining whether the policy was properly subject to division despite its status as separate property.

Indeed, regardless of the interplay between the spousal support award and the division of the life insurance policy, the fact remains that the trial court divided the life insurance policy without making any of the necessary findings under *Sparks*. Thus, the trial court must explain the division of the life insurance policy using the applicable *Sparks* factors. See *McNamara v Horner*, 249 Mich App 177, 186-187; 642 NW2d 385 (2002) (stating that, where the trial court failed to make factual findings pursuant to *Sparks*, remand was appropriate to allow the trial court to "make further findings of fact regarding the relevant property division factors").

Second, plaintiff argues that, if the trial court intended to award her spousal support in gross, then it properly awarded her the entire life insurance policy, but erred by failing to also grant her permanent spousal support. As previously noted, it is unclear whether the trial court's award was intended to be an award of spousal support in gross. Further, if it is true that the trial court granted plaintiff the entire cash value of the life insurance policy by awarding her half of it as a property distribution and half of it as spousal support in gross, then plaintiff's argument implies that the trial court abused its discretion by failing to award her permanent periodic spousal support *in addition to* spousal support in gross. Plaintiff does not further explain her argument and provides no relevant factual or legal support for the notion that she is eligible to receive both types of spousal support. An "appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008) (quotation marks and citation omitted). However, to the extent that plaintiff's issue pertains to the trial court's alleged failure to grant her permanent spousal support, the claim was previously addressed herein, and this Court finds it unnecessary to revisit the issue at length herein. In sum, the trial court's rulings regarding the spousal support award and the marital property division are impossibly intertwined. Accordingly, the trial court must clarify and reevaluate both the spousal support award and the division of the life insurance policy and make appropriate findings of fact pursuant to the spousal support factors set forth in *Olson*, 256 Mich App at 631, and the property distribution factors set forth in *Sparks*, 440 Mich at 159-160.

### III. ATTORNEY FEES

Plaintiff argues that the trial court abused its discretion by granting her an inadequate amount of attorney fees and failing to properly analyze her claim for attorney fees pursuant to MCR 3.206(D)(2)(a). We agree.

This Court reviews the award of attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). The "findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Id.* at 700. Findings are considered clearly erroneous if this Court is "left with a definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted).

"[A]ttorney fees are not recoverable as of right in divorce actions." *Reed v Reed*, 265 Mich App 131, 165; 693 NW2d 825 (2005). Rather, "attorney fees . . . may be awarded only when a party needs financial assistance to prosecute or defend the suit." *Id*. Attorney fees are authorized by statute, MCL 552.13, and court rule, MCR 3.206(D), in divorce actions. *Id*. at 164. Plaintiff seeks attorney fees pursuant to MCR 3.206(D), which states, in pertinent part:

> (D) Attorney Fees and Expenses.
>
> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.
>
> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that
>
> (a) the party is unable to bear the expense of the action, and that the other party is able to pay . . . . [MCR 3.206.]

Plaintiff owes $14,000 in attorney fees, and requested that defendant pay $5,000 of her attorney fees. When addressing the matter of plaintiff's requested attorney fees, the trial court stated:

> There does seem to be some disparity in the amount between the defendant's IRA and the plaintiff's IRA. In order to move forward with this, the [c]ourt is going to order that the defendant will pay $4,000 in attorney fees to plaintiff's attorney within six months, and he's going to be responsible for the IRS debt of $2,279.

The amended judgment of divorce states that "[d]efendant . . . shall pay to [p]laintiff . . . attorney fees in the amount of Four Thousand and 00/100 ($4,000.00) Dollars, within six (6) months of March 23, 2018."

Plaintiff argues that the trial court abused its discretion by granting her $4,000 in attorney fees as part of her property distribution, rather than as a separate award. Plaintiff appears to believe that the attorney fees she received were included in her property distribution based on the wording of the trial court's ruling regarding the attorney fees because the trial court stated that it chose to grant plaintiff $4,000 in attorney fees in order to remedy a perceived disparity between the value of defendant's IRA and the value of plaintiff's IRA. Plaintiff and defendant were permitted to keep their respective IRAs, and the trial court's wording suggests that the award of $4,000 in attorney fees was granted in an effort to balance the inequity between the value of the IRAs. Plaintiff contends that this is contrary to the principle that "a party should not be required to invade assets to satisfy attorney fees when the party is relying on the same assets for support." *Woodington v Shokoohi*, 288 Mich App 352, 370; 792 NW2d 63 (2010). Thus, plaintiff's argument appears to be that the trial court abused its discretion by granting her an inadequate amount of attorney fees as a remedy for a perceived imbalance in the division of property, rather than basing the decision on the evidence presented by plaintiff pursuant to MCR 3.206(D)(2)(a), which will ultimately force her to invade her separate assets to pay her attorney fees.

Generally, "a party should not be required to invade her assets to satisfy attorney fees when the party is relying on the same assets for support." *Woodington*, 288 Mich App at 370

(quotation marks and citation omitted). Additionally, a party may "sufficiently demonstrate[] an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702. As required by MCR 3.206(D)(2)(a), plaintiff presented evidence in the trial court showing that she relied solely on defendant's income during their marriage and had no income of her own. Further, plaintiff presented evidence that defendant received a pension and Social Security payments totaling approximately $3,200 per month, or $38,000 per year, indicating that he has income with which to pay the attorney fees.

When ordering attorney fees, a trial court should assess the facts of the individual case and determine "whether, under the circumstances, [the party] would have to invade the same spousal support assets she is relying on to live in order to pay her attorney fees[.]" *Loutts v Loutts (After Remand)*, 309 Mich App 203, 217-218; 871 NW2d 298 (2015). There is no evidence that the trial court made such an analysis herein. Rather, it appears that the trial court attempted to award attorney fees in an effort to balance the amount of money that the parties would receive in the division of assets. The trial court noted that there was a "disparity in the amount between the defendant's IRA and the plaintiff's IRA," and tried to remedy the disparity by awarding plaintiff $4,000 in attorney fees. However, "[t]he trial court may not award attorney fees, as apparently occurred here, solely on the basis of what it perceives to be fair or on equitable principles." *Reed*, 265 Mich App at 166.

Additionally, although plaintiff owed $14,000 in attorney fees at the time of trial, it is unclear whether she may have paid some of the attorney fees off, or how she may have done so. Plaintiff "borrowed" $23,000 from her father, including $6,000 for the payment of attorney fees. It is unclear whether plaintiff is expected to reimburse her father for the $6,000 used to pay attorney fees, why she sought the specific amount of $5,000 from defendant, and how much she currently owes in attorney fees. These factors are important to a proper determination of an attorney fee award. From these circumstances, it is apparent that the trial court abused its discretion by failing to award plaintiff the full amount of attorney fees requested and failing to properly consider the evidence presented pursuant to MCR 3.206(D)(2)(a). Accordingly, we vacate the portion of the amended judgment of divorce concerning attorney fees. On remand, the trial court is to consider the appropriate amount of attorney fees to award plaintiff.

We vacate the portions of the amended judgment of divorce pertaining to spousal support, the division of the life insurance policy, and attorney fees, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica

-12-