*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN L. HOAG,

        Plaintiff-Appellee,

v

WENDE KAY BERRY,

        Defendant-Appellant.

UNPUBLISHED
November 2, 2023

No. 361856
Genesee Circuit Court
Family Division
LC No. 19-329052-DO

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant Wende Kay Berry appeals as of right from the order of the trial court dissolving the marriage between Berry and plaintiff Brian L. Hoag, dividing the martial property, and awarding Berry spousal support.[1] We reverse and remand for further proceedings with respect to the trial court's award of retroactive spousal support only, and affirm in all other respects.

## I. BACKGROUND

This case concerns the divorce of Berry and Hoag, and, relevant here, Berry's challenge to the trial court's ultimate award of retroactive spousal support and its division of marital property. The parties met in 2004 and married in 2007. Berry had two children from a previous relationship, but the parties did not have any children together. At the time of trial, Berry was 59 years old and

---

[1] Genesee Circuit Court Judge Duncan Beagle presided over the trial that occurred between November 2020 and January 2021. At some point, however, Judge Beagle took a leave of absence. In April 2022, Genesee Circuit Court Judge Elizabeth A. Kelly, Chief Judge Pro Tem, entered an order designating Genesee Circuit Court Judge Joseph J. Farah to act in Judge Beagle's absence. Judge Farah issued a written opinion and order detailing his findings in late May 2022, then entered the consent judgment of divorce in late July 2022.

Hoag was 62. The parties began living together around 2005, and purchased a new home in 2011, where they continued to live together.

Hoag consistently worked throughout the marriage but had retired from General Motors in April 2013. His income included approximately $1,300 per month from a pension,[2] $1,200 per month in Social Security disability benefits, and between $1,200 and $1,600 per month from a part-time salary at an industrial company (depending on the number of hours worked), totaling approximately $4,200 per month. Berry, on the other hand, most recently worked as a contract writer for the "Ford retiree network," where she made $80 an hour, and for "1-800 Flowers," where she made $80 an hour. Before those positions, Berry worked as a media manager for St. John's Health, earning approximately $80,000 per year, until, according to Berry, she was laid off in 2007 (the year the parties married). According to Hoag, Berry stopped working in 2009. Berry testified that in 2011, she was "found to be disabled" and unable to return to work. Hoag believed that Berry had claimed rheumatoid arthritis as her disability. Thereafter, her income consisted of approximately $1,292 per month in disability benefits.

Berry testified about her numerous health conditions. These included inflammatory arthritis, mixed connective tissue disorder, fibromyalgia, systemic arthritis, and pancolitis. Berry had also previously suffered from cancer approximately three or four years before she and Hoag met. She also testified about her various surgeries since 2012, including five shoulder surgeries, knee surgery, hand surgery, ankle surgery, a hysterectomy, bilateral cardiac surgery, and numerous spine surgeries.

In July 2019, Berry left the marital home and moved to California because, she testified, Hoag was "very abusive" and had "threatened [her] life repeatedly . . . ." A month later, in August 2019, Hoag filed for divorce. Though the parties repeatedly engaged in mediation and settlement conferences throughout the case, the parties were unable to come to an agreement, and the case ultimately resulted in a contentious and lengthy bench trial at which both parties testified.

A large focus at trial was the parties' respective fault in causing the breakdown of the marriage, and each party spent a substantial portion of their respective testimony either blaming the other for their marital issues or denying accusations that the other had made throughout the proceedings. For example, Berry accused Hoag of interfering with her work and "cost[ing]" her clients when she was a writer by "scream[ing] obscenities" in the doorway of her office and answering her phone using obscenities. She also testified that Hoag "deliberately" exposed her to herpes and claimed that she suffered from yeast infections between 2006 and 2008, which she alleged stemmed from his sexual encounters with other people. Berry testified about "personally observ[ing] communications" between Hoag and other individuals. Hoag, on other the hand, denied having "slept with [anyone]," including Berry, "for the last five years of [his] marriage," stating that his "marriage lacked intimacy" for approximately "eight of the last nine years." According to Berry, the parties stopped having sex in 2014 because Hoag told her "he was gay . . . ." Hoag testified that Berry posted her claim that he was gay "all over Facebook" and referred to him as "an abuser and a closet homosexual . . . ." He also indicated that she contacted

---

[2] Hoag was previously married. His first wife received a portion of his pension, so the $1,300 he received from his pension was what he received after his first wife's portion was subtracted.

his friends and families about her allegations. Hoag described himself as "bi curious," and testified that he had an "online affair" with a woman in 2013 and another woman in 2010.

Berry also testified that Hoag abused her throughout the marriage, though it "accelerated" in November 2018 and included "specific death threats," hacking her electronic devices and putting malware on her computers, and abusing her pets. She also indicated that Hoag attended domestic violence counseling, a fact Hoag admitted, though he indicated he did so voluntarily. Hoag denied being physically abusive, but testified that Berry made him feel as though he "was verbally abusive." He believed he "was gaslighted [sic] more than anything" and indicated that Berry convinced him that he was more "emotionally abusive" than he "actually was."

The trial ended on February 2, 2021. In late May 2021, the trial court issued a written opinion and order dissolving the parties' marriage and addressing, in relevant part, spousal support, the distribution of marital property, and attorney fees. The court considered fault as a "separate category" because it "was so prominently discussed in this trial," and was a consideration for both spousal support and property distribution. The trial court concluded that despite the lengthy discussion of fault at trial, it was not a major factor, stating:

> Berry basically blamed Hoag for everything that has befallen her: pet problems, her health, her job, the loss of her home, her mental health, the demise of sexuality in their marriage, her need to relocate to California, the loss of a customer, and her disability to an extent. Hoag was hardly blameless, and the Court was left with inconclusiveness as to who fired the first shot. While Hoag denied most of the domestic violence accusations—if not all—proof of any physical violence was not presented. Nevertheless, Berry's feelings of emotional abuse were not born from whole cloth. Which is often common, domestic abuse is not ever present, and things can improve or subside only to return anew. These general principles were not foreign to this trial or this marriage.

> But neither party was persuasive enough to have the Court weigh fault very heavily. The Court is not persuaded by Hoag's denials, nor by any claim that Berry endured nothing, save what she created in her own mind. At one point, she was a productive, capable and skilled writer enjoying and warranting high compensation. Things went amuck. Hoag is not blameless.

> But Berry overplayed her hand. She at the same time protested about mistreatment while endeavoring to humiliate Hoag over his sexuality, even contacting his family. To what end? Her therapeutic benefit? Hardly. Her testimony was certainly long on accusations but a bit short on persuasiveness. When pressed, she was not forthcoming. She interrupted counsel—and the court, even in the midst of objection—to make her point, undeterred by courtroom protocol. Indeed, at one point, she could not answer a straightforward question about police involvement without descending into a seeming shibbolethic mantra about domestic violence. Her witness, Ann Kira, caught off guard as to what she was to testify about, offered little more than an unbridled oral dissertation on domestic violence unmoored to the facts of the case.

Make no mistake, Hoag has blame aplenty. But on the record before the Court, fault is not a major factor that tips the equitable balance any more than slightly. As with all breakdowns in marriage, blame is sufficient to go around. But the question before the Court is whether that blame should manifest itself in the financial balance of asset allocation and spousal support.

The Court declines to do so.

The most significant marital asset was the martial home. The trial court awarded Berry 50% of the proceeds from the sale of the marital home and 40% to Hoag. The court ordered that the remaining 10% be used to pay various unpaid marital expenses. The trial court also ordered Hoag to pay Berry's attorney's fees, as well as spousal support of $1,250 per month for eight years, retroactive to February 2, 2021, the date on which the trial ended. The order on retroactive support followed a motion Berry filed on September 14, 2020 requesting retroactive support, which the court took under advisement until trial. This appeal followed.[3]

## II. STANDARD OF REVIEW

"It is within the trial court's discretion to award spousal support, and we review a spousal support award for an abuse of discretion." *Loutts v Loutts*, 298 Mich App 21, 25; 826 NW2d 152 (2012). "An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 26 (quotation marks and citation omitted). We review for clear error the trial court's factual findings underlying its award of spousal support. *Smith v Smith*, 328 Mich App 279, 286; 936 NW2d 716 (2019). A finding is clearly erroneous if we are definitely and firmly convinced that the trial court made a mistake. *Id*. (quotation marks and citation omitted). We defer to a trial court's factual findings "stemming from credibility determinations." *Berger v Berger*, 277 Mich App 700, 718; 747 NW2d 336 (2008).[4] If we conclude that the trial court's factual findings were not clearly erroneous, however, we "must then decide whether the dispositional ruling was fair and equitable in light of the facts." *Smith*, 328 Mich App at 286. A support award must be affirmed unless we are "firmly convinced that it was inequitable." *Andrusz v Andrusz*, 320 Mich App 445, 452; 904 NW2d 636 (2017) (quotation marks and citation omitted). We also review for clear error the trial court's factual findings regarding the division of marital property. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014).

## III. PROPERTY DIVISION AND AWARD OF SPOUSAL SUPPORT

---

[3] The trial court entered the consent judgment of divorce in late July 2022, approximately a month after Hoag appealed from the court's opinion and order at issue here.

[4] We note that the trial judge that authored the opinion and order containing the findings and conclusions is different than the trial judge who presided over the trial. Neither side has argued that this affects our deference to the trial court's factual findings stemming from credibility determinations.

Berry first argues that the trial court did not consider or adequately weigh her needs, nor Hoag's fault in causing the breakdown in the marriage, when determining spousal support and dividing the marital property. We disagree.

The primary purpose of spousal support "is to balance the incomes and needs of the parties so that neither will be impoverished" on the basis of "what is just and reasonable under the circumstances of the case." *Loutts*, 298 Mich App at 26 (quotation marks and citation omitted). Trial courts should consider the following factors when determining whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Myland v Myland*, 290 Mich App 691, 695; 804 NW2d 124 (2010) (quotation marks and citation omitted).

Similar to spousal support, the trial court should divide marital property in an equitable manner. *Berger*, 277 Mich App at 716-717. Although the court need not "divide the marital estate into mathematically equal portions, . . . any significant departure from congruence must be clearly explained." *Id*. at 717. The factors that the court may consider when equitably dividing the marital estate include:

> (1) the duration of the marriage, (2) the contributions of the parties to the marital estate, (3) the age of the parties, (4) the health of the parties, (5) the life situation of the parties, (6) the necessities and circumstances of the parties, (7) the parties' earning abilities, (8) the parties' past relations and conduct, and (9) general principles of equity. [*Id*.]

The list is not exhaustive, and the court "may also consider additional factors that are relevant to a particular case." *Id*. The court "must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Id*. (quotation marks and citation omitted).

Berry argues that the trial court clearly erred in its findings because her "needs were never taken into consideration" and that it did not make a finding regarding her needs when it determined the amount of spousal support. She is incorrect. The trial court referenced Berry's needs throughout its opinion and order. The court specifically ordered Hoag to pay Berry's attorney fees because it found that she had "clearly *shown a need for help* on paying her attorney fees." The trial court also found that Berry was disabled, received nearly $1,300 in monthly disability benefits, and could not "meet her expenses without the help of her daughter." The court found

that the parties' incomes were "not even close," and an award of spousal support was "needed to close that gap." Berry testified at length about her needs, including her various health issues, her inability to work, and her meager income. The trial court's findings accurately reflect Berry's testimony. Contrary to her assertions, the record reflects that Berry's needs drove the trial court to award her $1,250 per month in spousal support, an equitable disposition in light of the facts.

Berry also argues that the trial court clearly erred in its findings because it did not adequately weigh the parties' fault in dividing the marital estate or determining the amount of spousal support. We disagree.

Berry asserts that "fault was drastically one-sided" and that the trial court's findings regarding Hoag's fault were "an understatement." In its opinion, the court acknowledged that fault was "prominently discussed" during the proceedings. The trial court indicated, however, that it did not ascribe fault to either party in the breakdown of the marriage because "neither party was persuasive enough to have the [c]ourt weigh fault very heavily." The record supports this finding. It is clear from the record that each party believed the other was wholly at fault for the breakdown of the marriage. Hoag believed that the lack of sexual intimacy caused the breakdown in the marriage, whereas Berry accused Hoag of physical and emotional abuse, infidelity, and that he was secretly homosexual. That Berry does not agree with how the trial court weighed the parties' fault does not, however, mean that the trial court weighed this factor inequitably. Although the parties testified extensively about fault, the trial court found both parties' credibility lacking and concluded that fault was "not a major factor that tips the equitable balance any more than slightly." The record supports this conclusion, and, regardless, we cannot on appeal disturb a trial court's factual findings "stemming from credibility determinations." *Berger*, 277 Mich App at 718. We are not convinced that the trial court made a mistake with respect to its factual findings regarding Berry's needs or Hoag's fault and, thus, discern no clear error. See *id*.

Berry further argues that the trial court abused its discretion because the amount of spousal support was insufficient and an award of 50 percent of the marital property was "equal" but "not equitable." We disagree.

The trial court's award of spousal support and its division of the marital property was equitable. Berry received 50% of the sale proceeds of the martial home, Hoag received 40%, and the remaining 10% was used to pay the parties' various marital expenses, including tax liabilities for the 2017 and 2018 tax years ($5,160 and $3,433, respectively) and a balance of $1,900 on Berry's vehicle. Once those marital expenses were paid, the remaining amount was split evenly between the parties, though the trial court awarded Hoag's portion of the remainder to Berry to cover her attorney fees. The court also ordered Hoag to pay an additional $8,000 to Berry to further assist in paying her attorney fees. Berry therefore effectively received more than 50% of the sale proceeds (plus the additional $8,000 from Hoag for attorney fees). Additionally, the trial court's award of spousal support nearly doubled Berry's monthly income while simultaneously reducing Hoag's monthly income, thereby "clos[ing] that gap" in income between the parties.

Although Berry contends on appeal that she clearly indicated her need for "$1,800.00 per month to manage," she misconstrues the record. Berry testified that all of her expenses were covered by her monthly disability benefits, except for $600 that she received from her daughter each month to assist in paying her rent. In response to a question of whether she believed $1,800

a month in spousal support, combined with her "limited income," would allow her to maintain a "reasonable" standard of living, Berry responded, "I would manage." She indicated it would allow her to "not have to owe every month" and would "take the burden off [her] daughter" and son.[5] It is unclear how $1,250 per month in spousal support—more than double the amount Berry was receiving from her daughter—is insufficient to cover Berry's remaining monthly expenses. We reiterate that the primary purpose of "spousal support is to balance the incomes and needs of the parties so that *neither* will be impoverished." *Loutts*, 298 Mich App at 26 (quotation marks and citation omitted; emphasis added). Given the evidence presented and the court's factual findings below, we are not convinced that the trial court's award of spousal support or division of marital property was inequitable. Accordingly, the trial court did not abuse it discretion by awarding Berry $1,250 in monthly spousal support payments or in the manner in which it distributed the marital property.

## IV. PERIODIC SPOUSAL SUPPORT AWARDS ARE ALWAYS SUBJECT TO CONTINGENCY AND MODIFICATION

Berry next argues that the trial court violated MCL 552.28 when it limited spousal support to a term of eight years. We disagree.

When a court awards spousal support, it may order that the support be paid in periodic payments or in gross. See *Bonfiglio v Pring*, 202 Mich App 61, 63-64; 507 NW2d 759 (1993); *Staple v Staple*, 241 Mich App 562, 566; 616 NW2d 219 (2000). Spousal support in gross is paid as "either a lump sum or a definite sum to be paid in installments . . . ." *Staple*, 241 Mich App at 566. It is also "nonmodifiable absent a showing of fraud." *Bonfiglio*, 202 Mich App at 63. Periodic payments, on the other hand, are "subject to any contingency, such as death or remarriage of a spouse . . . ." *Staple*, 241 Mich App at 566. They are also "subject to modification" pursuant to MCL 552.28. *Id*. That statutory provision provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action. [MCL 552.28.]

An award of periodic spousal support "may be modified upon petition of the receiving party showing new facts or changed circumstances." *Richards v Richards*, 310 Mich App 683, 692; 874 NW2d 704 (2015). Absent the parties' express intent to make spousal support unmodifiable, as expressed in the judgment of divorce, they maintain their right under MCL 552.28 "to seek modification of alimony." *Staple*, 241 Mich App at 568. MCL 552.28 precludes a court from ordering that periodic spousal support payments be unmodifiable and, absent explicit language indicating otherwise, a court's order limiting support to a specific term of years "may not be

---

[5] It is unclear from the record what Berry's son contributed to Berry.

interpreted to preclude [a party] from seeking to continue" or "modify the spousal support award . . . ." *Gates v Gates*, 256 Mich App 420, 433; 664 NW2d 231 (2003).

Here, the trial court's order contains no language indicating that the court explicitly intended to make spousal support unmodifiable. The trial court ordered Hoag to "pay spousal support in the amount of $1,250 per month for eight years from entry of the Judgment of Divorce." The court did not reference modification at all, let alone express that a party could not seek modification of the spousal support award upon a showing of new facts, proper cause, or a change of circumstances consistent with the statute. See *Gates*, 256 Mich App at 433-434; *Richards*, 310 Mich App at 692-693. That is, the order does not contain any language expressly precluding or attempting to preclude either party from seeking a modification of the spousal-support award before or after the eight-year period on a showing of new facts, proper cause, or changed circumstances. See *Gates*, 256 Mich App at 433-434; *Richards*, 310 Mich App at 692-693. Finally, as indicated, without clear language stating otherwise, a trial court order limiting spousal support to a term of years "may not be interpreted to preclude [a party] from seeking to continue" or "modify the spousal support award . . . ." *Gates*, 256 Mich App at 433. Because the trial court did not violate the plain language of MCL 552.28, it did not abuse its discretion by ordering Hoag to pay $1,250 per month in spousal support for eight years.[6]

## V. RETROACTIVE SPOUSAL SUPPORT

Finally, Berry argues that the trial court improperly ordered spousal support to be retroactive to February 2, 2021 (the last day of trial), rather than September 14, 2020 (the day she moved for temporary spousal support). We agree.

Under MCL 552.13(1), the trial court has discretion to award spousal support when a party has insufficient resources for support and maintenance:

> In every action brought, either for a divorce or for a separation, the court may require either party to pay alimony for the suitable maintenance of the adverse

---

[6] Berry also briefly argues that the trial court abused its discretion by not enforcing a signed agreement between the parties. But an agreement between parties in a marriage that anticipates "a future separation or divorce" is void and unenforceable as against public policy. *Wright v Wright*, 279 Mich App 291, 297-298; 761 NW2d 443 (2008). Cf. *Lentz v Lentz*, 271 Mich App 465, 473-474 n 5; 721 NW2d 861 (2006) (holding that the parties' postnuptial agreement was enforceable because they had already separated and, at the point that they had signed the agreement, had no intention of remaining married). But see *Hodge*, 303 Mich App at 559 (stating that if an agreement "seeks to promote marriage by keeping a husband and wife together, Michigan courts may enforce the agreement if it is equitable to do so."). Regardless, a close examination of the "agreement" between the parties reveals that there were no enforceable terms. The agreement stated that Hoag, in the event of a divorce, would provide Berry "adequate financial support" so that she could "live equitably" for the rest of her life. The agreement did not, however, indicate what the parties considered "adequate financial support." The trial court was therefore still required to determine an equitable amount of spousal support based on the testimony at trial and the various factors relevant to this case. See *Olson*, 256 Mich App at 631.

party, to pay such sums as shall be deemed proper and necessary to conserve any real or personal property owned by the parties or either of them, and to pay any sums necessary to enable the adverse party to carry on or defend the action, during its pendency. It may award costs against either party and award execution for the same, or it may direct such costs to be paid out of any property sequestered, or in the power of the court, or in the hands of a receiver. [MCL 552.13.]

The trial court is statutorily authorized to invade a spouse's separate assets when the property awarded to one spouse is "insufficient for the suitable support and maintenance of either party" after it considers "the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case." MCL 552.23(1). See *Reeves v Reeves*, 226 Mich App 490, 494; 575 NW2d 1 (1997) (indicating that MCL 552.23(1) allows "invasion" of a spouses' separate property when the other spouse "demonstrates additional need"). While a case is pending, a party may request an order for interim or temporary spousal support by filing a verified motion with the court, which the trial court may award after adequate notice and a hearing. MCL 552.13(1); MCR 3.207(C)(1) and (2).

The trial court erred by not making factual findings explaining its decision to make spousal support retroactive to February 2, 2021, but not to September 14, 2020. On May 31, 2022, the trial court ordered Hoag to "pay spousal support in the amount of $1,250 per month for eight years from entry of the Judgment of Divorce, the order being retroactive to February 2, 2021, the date trial concluded in this matter." The trial court therefore apparently intended to order 15 months of retroactive spousal support. As indicated, the court did not make any findings of fact to support making the spousal support award retroactive to February 2, 2021. Berry moved for temporary spousal support on September 14, 2020. In her motion, Berry indicated that she needed temporary spousal support during the pendency of the case. On September 28, 2020, the court held a hearing on the motion, but adjourned without deciding it, so that the parties could attend a settlement conference. Berry contends that "the issue was reserved," seemingly until the end of trial. Hoag's counsel also argued, during a September 28, 2020 hearing, that the issue of spousal support should be reserved for trial. The record reflects that Berry articulated her needs in her mid-September 2020 motion for spousal support and at trial. The trial court did not make any specific factual findings to support making the spousal support award retroactive to February 2, 2021, and the record does not reveal the factual basis for its decision. Without factual findings explaining its reasoning, we cannot conclude that it was fair and equitable for the trial court to award spousal support retroactive to February 2, 2021. On remand, the trial court should clarify the reasoning supporting its decision on retroactive spousal support, including the reasoning supporting its chosen start date, whether February 2, 2021 (the date of trial), September 14, 2020 (the date of Berry's motion), or some other date.

We reverse and remand for further proceedings related to the trial court's decision to make the spousal support award retroactive, but we affirm in all other respects. We do not retain jurisdiction as it relates to the retroactivity issue.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado